### GRACIE v. STEVENS et al.

(Supreme Court, Appellate Division, First Department. December 21, 1900.)

1. BROKERS—DOUBLE COMPENSATION—INSTRUCTIONS.

     Where a broker, having secured a purchaser for a ferry, sued to recover commissions for the sale of another ferry by defendants to the same purchaser, and defendants contended that, if plaintiff had been employed to find a purchaser for the second ferry, he was not entitled to compensation for such sale because of an agreement between him and the purchaser whereby he was to receive compensation from the purchaser if he bought the first ferry, it was proper to charge that, if the plaintiff had nothing to do with the terms of the sale, and he was not

intrusted with discretion, his arrangement for receiving compensation would not preclude recovery.

2. SAME—ESTOPPEL.

Where a broker, having secured a purchaser for a ferry, sued to recover commission for a sale of a second ferry by defendants to the same purchaser, and defendants contended that, if plaintiff had been employed to find a purchaser for the second ferry, he was not entitled to compensation because of his having agreed with the purchaser to receive compensation from him if he bought the first ferry, and it appeared that defendants, on learning of such agreement, agreed that, if the purchaser did not pay such amount, they would, plaintiff was entitled to an instruction that it was a question for the jury whether defendants had not acquiesced in the arrangement with the purchaser, so as to preclude them from setting up its invalidity.

3. APPEAL.

When no exception was taken to the refusal of the court to charge the jury to disregard certain evidence, the refusal could not be reviewed on appeal.

4. BROKER'S COMPENSATION—REASONABLENESS.

In an action by a broker for compensation for securing a purchaser for a ferry which was sold for $4,500,000, a verdict for $112,500 was not excessive.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Archibald Gracie against Edwin A. Stevens and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

John E. Parsons, for appellants.
Edward C. James, for respondent.

RUMSEY, J. The action is brought to recover commissions earned by the plaintiff by procuring a purchaser for what was known as the "Lower" ferries, belonging to the defendants and other persons. The defendants had inherited from their ancestor the right to operate and were conducting two ferries, one known as the "Fourteenth Street," or "Upper," ferry, which extended from Fourteenth street in Hoboken to Fourteenth street in New York, and the other known as the "Lower" ferry extending from Newark street in Hoboken to Christopher and Barclay streets in New York. It is claimed by the plaintiff that the defendants employed him to procure a sale of those properties, and that he did so. He was paid a certain sum as his compensation for procuring a purchaser for the Fourteenth Street ferry, and he brings this action to recover the value of the like services as to the Lower ferry. The jury to whom the disputed questions of fact were submitted found for the plaintiff in a very considerable sum. A motion was made for a new trial, which was denied, and from the judgment entered upon the verdict and from the order denying the motion for a new trial this appeal is taken.

The plaintiff's claim was that he was employed to obtain a purchaser not only for the "Fourteenth Street" ferry, so called, but for the Lower ferries as well. The defendants, on the contrary, while admitting that the plaintiff had been employed to find a purchaser

for the Fourteenth Street ferry, insist that there was no employ-
ment as to the Lower ferries, and that he made no efforts in that
behalf; and they say further that, before the sale of the Fourteenth
Street ferry had been completed, the plaintiff entered into an agree-
ment with Eldridge, the purchaser of that ferry, by which Eldridge,
if he succeeded in purchasing that ferry, was to pay the plaintiff
$10,000 for his services; that, immediately upon ascertaining that
fact, they acceded to the contract made between Eldridge and the
plaintiff for the payment of the $10,000, and guarantied the pay-
ment of that sum by Eldridge to him, and thereupon discharged the
plaintiff from all further employment on their behalf. The plaintiff
insists that, having been employed to sell not only the Upper, but
the Lower, ferry, he had brought Eldridge to the defendants as an
immediate purchaser of the Upper ferry at the price fixed by the
owners, and as a prospective purchaser of the Lower ferries within a
very short time, upon the terms he had been instructed to demand.
The plaintiff claims in addition that he never had a contract with
Eldridge for the payment of the $10,000; that Eldridge made a prop-
osition to pay him that sum, which he had never accepted, but that,
when the defendants ascertained that Eldridge had made that prop-
osition, they agreed to his accepting it as his compensation for the
sale of the Upper ferry, and after that time, so far from discharging
him, they continued him in their employment with respect to the
sale of the Lower ferry, and asked him to take no active part by way
of conversations with Eldridge, unless requested to do so by them.
Each of these two contested issues of fact was submitted to the
jury by the learned justice at the trial term. They have found a
verdict for the plaintiff, and upon a careful consideration of the
evidence we are convinced that the evidence was sufficient to war-
rant that finding.

The serious questions arise upon the exceptions of the defendants
to the charge of the court and to the refusals to charge as requested
by them. The court correctly instructed the jury as to the nature
of the employment of a broker, such as the plaintiff claimed to be;
as to what his duties were in the premises; as to what was neces-
sary to constitute such an employment; as to the extent of the serv-
ices, and what he was compelled to do before he became entitled
to recover his compensation; and submitted to the jury the ques-
tion whether or not he had brought himself within the rules of law
given to them. As to all these matters we can perceive no errors
in the charge. The jury were told that, if they found that the plain-
tiff was employed to procure a purchaser of the ferry, they were
then to consider the question whether he conscientiously and faith-
fully did what he was employed to do. After giving them full direc-
tions as to what it was necessary to prove by way of showing that
he was the procuring cause of the transaction, he called the atten-
tion of the jury to the question of good faith, saying that the plain-
tiff's right to a recovery depended upon his having acted faithfully
and conscientiously in behalf of the defendants in the course of his
employment. In regard to that matter he instructed the jury sub-
stantially that, if they found that the plaintiff was employed to pro-

cure a purchaser of the Lower ferries, and that he had nothing to do, with the terms and conditions of the sale, but that these were to be determined by the defendants when they met the prospective purchaser, there would be nothing inconsistent with good faith on the part of the plaintiff in making an arrangement with Eldridge for commissions, or in failing to notify the defendants of such arrangement. But he instructed them further that, if they found there was an employment, and that, pursuant to such employment, the plaintiff was intrusted with the least discretion, or if the plaintiff's skill and judgment were relied upon by the defendants, then his agreeing to act in a similar capacity for Eldridge, where his duty and interest might conflict, his acceptance of such an arrangement with Eldridge, and its concealment from the defendants, would avoid the plaintiff's right to recover any compensation. The correctness of this charge, and whether it fairly presented the rule of law which the jury should have considered upon that subject, is the principal question presented to us upon this appeal. There can be no doubt of the general rule that a broker who is employed to sell property, and whose duty it is not only to find a purchaser, but to negotiate the sale, cannot accept any compensation from any other person than his employer; and if he does make an agreement to be paid by the purchaser, or if he assume a position with reference to the transaction where his duty and interest might clash, he loses all right to his commissions from his employer. Among the numerous cases where that rule is laid down it is only necessary to cite Abel v. Disbrow, 15 App. Div. 536, 44 N. Y. Supp. 573; Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867. But that rule, as is stated in the cases above cited, applies only to a case where the duty of the broker to his employer calls for the exercise of his judgment or discretion when he must confine himself to acting for the person who employed him, and look solely to him for his reward. But when he is employed simply to find a purchaser upon terms fixed by his employer his duty is performed by bringing to the seller one who is willing to purchase upon such terms. He has no discretion to exercise, and there is no reason why he should not be permitted to take from the purchaser such compensation as he may see fit to give for the benefit he has received by being informed of the fact that he would be able to make such a purchase. Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867. In the case at bar it is evident that the terms of the sale were fixed by the defendants themselves, and that all the plaintiff had to do in that regard was to state to the intending purchaser the price and the terms of payment upon which the property could be bought. But there are many other things which he might do which are not matters of discretion. For instance, in this case it appears that he not only sought a purchaser, but informed himself as to the extent, the value, and the income of the property, and learned what it was composed of, and the liens upon it, and obtained other information which could only be acquired with effort and much trouble, and which undoubtedly tended to bring about the purchase of this property by Eldridge. We think that when the court charged the jury as it did it had stated quite as favorably to the defendants as

they were entitled to have the limit of the right of the plaintiff to make a contract for compensation with Eldridge, and when they found—as they might—that with respect to all matters of negotiation no discretion was vested in the plaintiff, they were then justified in finding further that he was entitled to a verdict against the defendants.

It is not to be forgotten that there was practically no dispute that, after the defendants learned that Eldridge had made this offer to the plaintiff for his compensation, they adopted the arrangement themselves, and guarantied its payment, and it seems to have been understood between them and the plaintiff not only that, if Eldridge did not make the payment of this $10,000, it would be made by the defendants, but that it was to be taken by the plaintiff as his full compensation upon the sale of the Fourteenth Street, or Upper, ferry. So that the plaintiff, if he had asked for it, would have been entitled to a charge that it was a question to go to the jury whether the defendants had not acquiesced in his contracting with Eldridge for a compensation, and adopted that agreement as a mode of payment of his compensation, so that they were thereafter precluded from setting up its invalidity.

But it is said by the defendants that the court erred in refusing to direct the jury to disregard the evidence of the plaintiff and his witnesses as to the value of his services, and that the court should have directed the jury to disregard such evidence. The defendants claim that this evidence was admitted upon the theory that the contract with them called upon him to manage the negotiations between the intending purchaser and the defendants, in which there was left open not only the question of the nature of the property and the advisability of its purchase, but also the price to be paid, and the terms of payment; and, as the case was submitted to the jury upon the theory that they might find that these elements were not present in the employment of the plaintiff, therefore the evidence was misleading, and should not have been considered by the jury in fixing the value of the plaintiff's services. We do not find that any exception was taken to the refusal of the court to charge the jury to disregard the evidence in question. For that reason nothing in that regard is presented for our consideration.

We have examined also all the exceptions taken by the defendants, and presented in the various points which have been submitted. We find none of them sufficient to warrant the reversal of the judgment. As to the amount of the verdict, it was undoubtedly large; yet upon the whole testimony, taking into consideration the extent of the property, the nature of the employment, and what is shown to be the prevailing rate of compensation for services of that nature, we are unable to say that it was more than the plaintiff was entitled to expect when he assumed the employment. It must be remembered that, although the plaintiff was fortunate enough to procure this purchaser within a short time, yet he had no reason to expect such good fortune at the time of assuming the agency, and his right to compensation for these services is to be determined by the end that was accomplished; and the time that was taken in the bringing

of it about is not the only thing to be considered, because, if the transaction had taken a longer time, he would not have received any greater compensation for it, and therefore, if he was fortunate enough to hit upon a purchaser with little delay, there is no reason why he should not recover the full compensation.

The judgment and order should therefore be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and HATCH, JJ., concur.

INGRAHAM, J. I do not agree in the affirmance of this judgment. The plaintiff, in his complaint, has characterized the services that he alleges he was employed to render. He alleges that he was "to use his influence and endeavor to procure a purchaser or purchasers of their interest in the said Hoboken Ferry Company, and defendants agreed to pay plaintiff liberally therefor." The plaintiff testified that on October 2, 1895, having had some conversation with a Mr. Hopkins, who was the president of the New York, Susquehanna & Western Railroad Company, he saw the defendant Edwin A. Stevens, and asked him whether he and his family were willing to negotiate for the sale of the Weehawken Cove and the Fourteenth Street ferry, and whether he would authorize the plaintiff to find a purchaser for it, or for those properties. In reply Mr. Stevens said, "Yes," and the plaintiff then told Stevens that the people that he had in mind were the Susquehanna & Western Railroad Company, and said to Stevens that, "if he would give me authority to negotiate with these people, I would be able to bring about—that I would be able to interest these people. He says: 'All right. Go ahead, and see what they want, and, when you find out what they want, come and see me again. All right.'" Thus, at the beginning, the plaintiff was authorized to negotiate a sale of the Fourteenth Street ferry and the Cove. In pursuance of this authority the plaintiff proceeded to negotiate for the sale of the Fourteenth Street ferry and the Cove property; had interviews with Hopkins, and was referred to a Mr. Eldridge, who was connected with the railroad company. The plaintiff had an interview with members of the Stevens family on the 14th of October, and then informed them that he had seen Mr. Hopkins, of the Susquehanna Road; that he (Hopkins) was ready to consider it, and wanted to know what price the ferry could be obtained at, and what price the Cove could be obtained at. This employment in regard to the Fourteenth Street ferry and the Cove was not a mere employment to find a purchaser, but an employment to negotiate a sale of those properties. There was nothing said about finding a purchaser for them as distinct from negotiating the sale, and I think that the plaintiff assumed the obligation of a broker to negotiate for the sale of this property for the defendants. His subsequent conduct under this employment corroborates this view of the relation that he bore to the defendants. He continued to negotiate with Eldridge, to whom he had been referred by Hopkins, and Eldridge made an offer to purchase the Fourteenth Street ferry for the sum of $850,000. That offer the plaintiff submitted to the ferry company in writing, as follows:

"Hoboken, N. J., Nov. 13, 1895.

"Hoboken Ferry Co., Hoboken, N. J.—Dear Sirs: I have received, as your agent, a proposition from Mr. Roswell Eldridge, in which he offers to purchase your ferry running between 14th St., Hoboken, & 14th St., New York, for $850,000; $250,000 in cash, $600,000 in bonds.

"Yours, very truly,          A. G."

—(A. G. standing for Archibald Gracie.)

On November 16th, two days after this letter was written, the Hoboken Ferry Company declined the proposition, and communicated that fact to the plaintiff. When this fact was submitted to Eldridge, he wished to see the defendants himself. Subsequently Eldridge made a higher offer to the defendants, which was accepted, and an agreement made by which he purchased the Fourteenth Street ferry. During this time the plaintiff was assumedly acting as the representative and agent of the defendants, conducting the negotiations with Eldridge on their behalf. He had a special contract with defendants as to the compensation that he was to receive in case he sold the property known as the Cove; but had no special agreement as to the compensation that he was to receive for the sale of the Fourteenth Street ferry. He was constantly asking for some agreement as to his compensation for the sale of the ferries. While he was thus acting for the defendant, and on October 31st, Eldridge made a proposition to the plaintiff by which he (Eldridge) was to pay the plaintiff $10,000 for services that he should render in connection with the Fourteenth Street ferry. In answer to that proposition the plaintiff testified that he told Eldridge that he would not answer him at the time, but would let him know later on; and on November 4, 1895, Eldridge renewed this proposition in writing, which was delivered to the plaintiff, as follows:

"Confirming our conversation of last week, would say that, if I succeed in buying the 14th Street ferry from the Stevens estate or Hoboken Ferry Company within thirty days, I will pay you ten thousand dollars for your services. If there is no sale, then nothing is to be paid you.

"Yours, truly,          Roswell Eldridge."

The plaintiff, in his testimony, says that the fact was that on October 31, 1895, he had a conversation on the subject with Eldridge, the subject being that the plaintiff was to receive $10,000, and that that was confirmed in writing on the 4th of November. That writing the plaintiff retained until at the end of the year he received $10,000 from Eldridge, and surrendered the instrument. The plaintiff failed to communicate the receipt of this proposition from Eldridge to the defendants, and thus, during the time in which he was acting as the agent of the defendants and directing a negotiation for them for the sale of the Fourteenth Street ferry, he had in his possession a written promise from Eldridge to pay him $10,000 if the sale took place. At the interview between Eldridge and the defendants, after the defendants had rejected Eldridge's offer to purchase the ferry at $850,000, Eldridge informed the defendants of this arrangement with the plaintiff, and from that time on the defendants refused to have further dealings with the plaintiff, and refused to further recognize him as their agent. He received his compensation for the sale of the Fourteenth Street ferry, not from the defend-

ants, but from Eldridge; and, as soon as defendants knew of plaintiff's agreement with Eldridge, they insisted that, by reason of his agreement to receive his compensation from Eldridge, he had relieved them from all obligation to pay him, and, in that view, so far as the Fourteenth Street ferry was concerned, the plaintiff acquiesced, and made no claim against the defendants for any commissions for the sale of that ferry. There can be no question, I think, but that the defendants had a right to take the position that they did, and that the plaintiff, by his acceptance of this offer from Eldridge, relinquished any right that he might have to claim compensation from the defendants for services rendered to them under his employment. He had received, while the broker of the defendants, an offer, which he at least did not reject, for a payment from the person with whom, as the defendants' agent, he was negotiating, upon condition that the transaction was completed. Under all the authorities, this was such a violation of the duty that he owed to the defendants as to justify the defendants in refusing longer to employ him, and terminating any employment that he had from them as their agent.

We now turn to the transaction in relation to which the plaintiff makes his claim against the defendants. The plaintiff testified that at the interview of the 14th of October, 1895, with the members of the Stevens family, in relation to the sale of the Fourteenth Street ferry and the Cove property, Mr. Richard Stevens said to him:

"Mr. Gracie, why don't you find some gentlemen whom you can interest, and bring over here to see us, who will purchase the whole property from us? My brother, Edwin A. Stevens, is ill. While we are willing to sell the other ferry, at the same time the burden of all this business falls upon him, and, if you only sell the Upper ferry, that will not take the burden off our hands; but if you will find us a purchaser for the Lower ferry and the whole property, we will pay you liberally."

To that the plaintiff replied:

"I didn't know before that you were willing to sell the whole property. I am glad to hear it, and I will undertake it."

The defendants then gave to the plaintiff the details relating to the Lower ferries, running from Barclay and Christopher streets, New York, to Hoboken, and about the sale of which nothing before had been said. The plaintiff subsequently communicated this offer to Mr. Eldridge, and endeavored to interest Mr. Eldridge in the purchase of these Lower ferries. Eldridge, however, refused to entertain that offer, stating at the time that, in consequence of the stringency of the money market, and for other reasons, it was impossible for him to make the purchase, but that he would at present negotiate for the sale of the Fourteenth Street ferry, and would be willing to purchase the Lower ferries in the following spring. The plaintiff's own account of his negotiations with Eldridge in relation to those Lower ferries shows that he acted in relation to them in the same way that he had acted in regard to the Fourteenth Street ferry; that he was negotiating with Eldridge for the purchase of the Lower ferries. He communicated to Eldridge the offer that the defendants had authorized him to make for these Lower ferries, stating that he was author-

ized to offer them for sale for $4,750,000, subject to a mortgage of
$1,000,000 upon the property. That was the only offer that the plain-
tiff was authorized to make for the defendants. At the same time
the plaintiff told Eldridge that the defendants had said to him that,
in the event of the plaintiff's not being able to get as high a price as
that for it, they would be willing to accept $4,500,000, subject to the
mortgage for $1,000,000,—information which it is quite evident de-
fendants did not intend should be communicated to the proposed
purchaser. Thus it would appear that the plaintiff was not really
at this time endeavoring to procure the highest price that he could,
but, when authorized to make an offer for a certain sum, he informed
the proposed purchaser (Eldridge) that the defendants would accept
a less sum; and this at a time when Eldridge had not refused the
offer, but had simply refused to negotiate at that time for the pur-
chase of the Lower ferries, wishing to postpone such negotiations
until the spring, when the condition of the money market would
make a purchase more convenient. The plaintiff had at the time in
his pocket an offer from Eldridge to pay him for his services in nego-
tiating the sale of the Fourteenth Street ferry that he had not com-
municated to the defendants. The interest of the defendants was to
get the highest price for the property; the interest of Eldridge was
to get the property at the lowest price. If plaintiff had been acting
in good faith for the defendants, he certainly would not have in-
formed Eldridge that, although he had been authorized to offer the
property for $4,750,000, it could be purchased from the defendants
for $4,500,000. As before stated, Eldridge refused to negotiate at
that time for the sale of the Lower ferries, and nothing further was
said or done about the Lower ferries during the conduct of the nego-
tiation in which the plaintiff took an active part. When, however,
Eldridge communicated to the defendants the fact that he had prom-
ised to pay the plaintiff the sum of $10,000 for his services in the
negotiation of the Fourteenth Street ferry, the defendants at once
refused to recognize the plaintiff as their agent, at once repudiating
all obligation to him on account of any employment of theirs, and re-
fused to allow him to further conduct the negotiation on their part,
upon the ground that the plaintiff had, at the time he was acting for
them in regard to the Fourteenth Street ferry, accepted a promise
from Eldridge to pay him a commission; and, unless we are to over-
rule all the authorities under which a broker is required to act in good
faith towards his principal in the conduct of negotiations of this
kind, it seems to me that we must hold that the defendants had a
perfect right to repudiate all relations with the plaintiff after their
discovery that he had received and accepted an offer of payment from
the person with whom he was negotiating as agent of the defendants
for the sale of their property. As a fact, however, I do not think
that the plaintiff did procure or introduce to the defendants a pur-
chaser for the Lower ferries. Before anything was said about the
sale of the Lower ferries, plaintiff was negotiating with Eldridge for
the purchase of the Fourteenth Street ferry. He submitted a propo-
sition that Eldridge should purchase the Lower ferries. This El-
dridge rejected, and all that was done by the plaintiff about the

Lower ferries was that during the negotiation for the sale of the Fourteenth Street ferry he submitted the proposition for the sale of the Lower ferries to Eldridge, who declined it. He never, therefore, procured a purchaser for the Lower ferries. He did for the Fourteenth Street ferry, and for that he was paid. The fact that Eldridge more than six months afterwards purchased the Lower ferries would hardly, I think, justify a claim by the plaintiff that he had procured Eldridge as a purchaser for the Lower ferries; and certainly, to sustain this recovery, allowing to the plaintiff the enormous sum that was given to him by the jury because during the conduct of the negotiation of the sale of the Fourteenth Street ferry he suggested to Eldridge that he purchase the whole ferry system, which proposition Eldridge declined, would be allowing the plaintiff a compensation for services that he never rendered. In the examination of the experts as to the value of the plaintiff's services, their opinion was based upon the reasonable compensation to be paid to an agent·or broker who conducts a sale of property for the price at which these Lower ferries were purchased. No one testified that the services rendered by the plaintiff were worth anything like what plaintiff has recovered; and, if the plaintiff was entitled to recover anything,—which I dispute,—he certainly would be entitled to recover only the value of the services that he rendered during these few days in October and November, after he made the suggestion about the purchase of the Lower ferries, and before his employment was revoked. There was no evidence of the value of the services that were actually rendered by the plaintiff, and under the circumstances I think the defendants were entitled to have the request that the evidence of the plaintiff and his witnesses as to the value of the services should be disregarded in determining the amount of their verdict charged. The court refused so to charge, and counsel for the defendants expressly excepted to the refusal "in the case of each request made by the defense" which was refused.

That $112,500 was the "reasonable value of the services" rendered by the plaintiff, was unsupported by evidence; and the amount seems to me to be out of all proportion to the services actually rendered, and grossly excessive. It is hardly necessary to cite authorities to sustain the proposition that, where a broker is employed to negotiate the sale of property, his acceptance, without the knowledge of his employer, of an agreement to receive compensation from a purchaser, is a breach of trust, and prevents him from recovering any compensation from the seller.

In Carman v. Beach, 63 N. Y. 97, the court say:

"If the plaintiff proceeded to act under this employment, it was his duty to act solely for and in the defendant's interest. This, although not expressed, was implied in the contract. The defendant was entitled to the disinterested efforts and judgment of the plaintiff in the matter of the agency; and if the plaintiff had procured a purchaser, for whom he was also acting as agent, without disclosing the fact to the defendant, it would have constituted such an offer as would have precluded him from recovering any compensation. * * * When the plaintiff undertook to deal for Martin, it was equivalent to a renunciation of the agency for the defendant, and nothing short of an unequivocal recognition by the parties thereafter of the existence of the agency should be regarded as sufficient to establish it."

In Murray v. Beard, 102 N. Y. 505, 7 N. E. 553, the same principle was applied, the court saying:

"The plaintiff, while assuming to act for the defendants in obtaining the contract of sale, was in fact under equal obligations to competing dealers to assist them in effecting the same sale. Thus, if the plaintiff's services could have been of advantage to any one, he was under the necessity of being treacherous to one employer or another. An agent is held to uberrima fides in his dealings with his principal; and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal as to forfeit any right to compensation for services. It is an elementary principle that an agent cannot take upon himself incompatible duties and characters, or act in a transaction where he has an adverse interest or employment. In·such a case he must necessarily be unfaithful to one or the other, as the duties which he owes to his respective principals are conflicting, and incapable of performance by the same person."

And the rule is again stated in the case of Knauss v. Brewing Co., 142 N. Y. 70, 36 N. E. 867, where the court say:

"We agree perfectly with the cases of Carman v. Beach, 63 N. Y. 97, and Murray v. Beard, 102 N. Y. 508, 7 N. E. 553. It is undeniable that where the broker or agent is invested with the least discretion, or where the party has the right to rely on the broker for the benefit of his skill or judgment, in any such case an employment of the broker by the other side in a similar capacity, or in one where by possibility his duty and his interest might clash, would avoid all his right to compensation. The whole matter depends upon the character of his employment."

As was said by the chancellor in Porter v. Woodruff, 36 N. J. Eq. 174:

"So jealous is the law upon this point that it will not even allow the agent or trustee to put himself in a position in which to be honest must be a strain upon him."

I have discussed this question solely upon the evidence offered by the plaintiff upon the trial, assuming that his account of the transaction is true.

At the close of the plaintiff's case the defendants moved to dismiss the complaint upon the ground that "the defendants, having learned from Eldridge prior to November 29, 1895, of the transaction between him and the plaintiff, they had the right to decline to continue his employment, if there were any employment." I think upon this ground the complaint should have been dismissed, and that it was error to deny the motion.