Patbick J. Picabiello, J.
Plaintiff, a licensed real estate broker, sues to recover a brokerage commission allegedly due him under an expressed and/or implied agreement with defendant, a real estate entrepreneur.
*892 The facts seem not to be in dispute. The issue to be resolved in this lawsuit is whether or not plaintiff acted for the defendant in his capacity as a licensed real estate broker in the subject transaction and whether or not there emerged therefrom an agreement, expressed or implied, whereby the defendant bound himslf to pay plaintiff a brokerage commission.
It appears that prior to January 8, 1970, plaintiff alerted defendant of the availability for purchase of a tract of land known as Green Acres located in Lake Huntington, New York, in the possession and control of the Small Business Administration, the prospective seller.
After some preliminary negotiations between plaintiff and seller for the purchase of said realty and after the latter had advertised the same for public sale, .seller acknowledged receipt of a bid from plaintiff as a real estate broker for the purchase of said realty. Immediately thereafter and by letter dated November 3, 1969, seller acknowledged receipt of defendant’s check for $5,250 which, said communication set forth, “was a good faith check accompanying your offer ” for the purchase of the subject realty for $105,000. This letter was addressed and mailed to the defendant.
On November 12, 1969, plaintiff, unbeknownst to the defendant, communicated with the seller (defendant’s Exhibit B) and requested a brokerage commission for his efforts in bringing about the sale and suggested that the same be paid to him on title closing.
On January 8, 1970, the formal contract of sale was signed between seller and defendant, the deed to be delivered in New York City on January —•, 1970.
It is significant to note that plaintiff was present at this contract 'Signing and that deleted from the sales contract was the printed provision for the payment of a brokerage commission.
After the contract of sale was signed, and by letter dated January 29, 1970, addressed to the plaintiff and again unbeknownst to the defendant (defendant’s Exhibit D) the seller acknowledged that plaintiff’s efforts were instrumental in the purchase offer accepted by it and agreed to pay him therefor a commission of $5,000.
Title closing was adjourned by defendant several times for a number of reasons until finally on December 31, 1970, the seller declared defendant in default and appropriated unto itself the deposit of $15,000 paid by the defendant on contract closing.
It was testified to by the defendant that the sole reason for his default was that it had become fiscally inconvenient and unwise for him to consummate the purchase transaction.
*893 Having thus been deprived of his $5,000 commission from the seller by reason of defendant’s refusal to consummate the transaction, plaintiff instituted the present action against the defendant to recover a real estate brokerage commission in the sum of1 $10,000, alleging in his complaint that he had acted as a broker on behalf of the defendant in the subject transaction and predicating his cause of action on an alleged expressed or implied agreement on the part of the defendant to pay him such commission.
It is clearly settled that, before a broker can collect his commission, he must have been employed by his principal as such. Such employment may be expressed or implied. If expressed, it may be either written or oral; if implied, the facts surrounding the employment must establish that the broker was indeed employed as such to perform the services rendered.
It is quite evident that plaintiff’s testimony was adduced for the purpose of proving the existence of an expressed or implied agreement by the defendant to pay him a commission for services rendered as a real estate broker. There can be no question but that this testimony points to such a fact. However, the general rule of evidence which applies to a situation of this kind has been frequently stated, its objective being to lead the court to a reasonable conclusion. That rule is the progressive value of proven coincidences based upon undisputed facts, all pointing to one and the same conclusion. A single undisputed fact, or coincidence, may often temporarily point to the truth. However, in the context of all the surrounding facts and circumstances in this case, particularly defendant’s Exhibits B and D in evidence, whereby plaintiff solicited a commission from the seller in payment for his services rendered as a real estate broker, and the latter’s agreement to pay the same, the relevance of that single fact, that is, the expressed or implied agreement allegedly made by the defendant to pay said commission, as plaintiff testified, is destroyed.
Plaintiff’s dissertation in his memorandum on the legal principles applicable to a principal and agency relationship is indeed appreciated by the court and found to be quite accurate. His legal conclusions drawn therefrom that his complaint is a viable one and that he therefore is entitled to recover a commission from defendant is also correct. The fallacy in this argument, however, is that a recovery by him must presuppose and hypothesize the finding of a principal and agency relationship out of which there arose an expressed or implied agreement to pay a brokerage commission.
*894 Defendant claims no such relationship and no agreement by him, expressed or implied, to pay plaintiff a commission. It is his contention that plaintiff’s remuneration for services rendered and to be rendered consisted of a participating interest in a corporation to be formed.
The evidence and testimony favorable to the defendant on this issue, and all the facts and circumstances surrounding the transaction, both before and after the contract of sale was signed, leaves the court with a greater conception of the truth than the evidence and testimony favorable to the plaintiff, and that is that no matter what the relationship then and there existed between these litigants, there was no agreement on the part of the defendant, expressed or implied, to pay plaintiff a commission, and the court so finds.
This finding is further buttressed, in this court’s opinion, and defendant’s contentions are thereby vindicated, by the .remarkable activities of the plaintiff after the contract was signed to effectuate a reduction of the unpaid real estate taxes on the subject realty and by his preparation of a feasibility application to E. S. S. Assoc. Ltd. to obtain a larger loan from a lending institution in the sum of $300,000, which application is dated June 10, 1970, and is .signed by plaintiff as president of Lake Huntington Land Development Corp. and by the defendant as its vice-president.
It is the court’s opinion that plaintiff’s evidence lacks that degree of persuasiveness upon which judgment can be rendered for plaintiff on his complaint.
At the close of his case plaintiff, predicating the application on defendant’s Exhibits B and D in evidence and the testimony elicited thereon, moved the court to amend his pleadings to conform to the evidence; specifically, to recover the sum of $5,000 which the seller had agreed to pay him as a commission upon the closing of title, which never took place because of defendant’s default (supra). The court reserved decision thereon on defendant’s objection and his plea of surprise.
Subdivision (c) of CPLR 3025 provides that the court may permit pleadings to be amended even “ after judgment” to conform them to the evidence, and “ even if the amendment substantially alters the theory of recovery * * * [so] that an action shall not fail solely because it is not brought in the proper form or under the precise pleading.” (Dittmar Explosives v. A. E. Ottaviano, Inc., 20 N Y 2d 498, 502).
Thus, this rule is intended to govern both amendment during trial (even) when proffered evidence is objected to, and *895 amendment during or after trial in case of variance (First Preliminary Report of Advisory Committee on Practice and Procedure, p. 78 [1957]). Nothing in this rule justifies a denial of the request for amendment at trial on the sole ground that the amendment would change the legal theory or the cause of action or would bring before the court matters outside the transactions and occurrences set forth in the original pleadings.
Moreover, the theory of his lawsuit remains the same, and there is little likelihood of surprise or prejudice, since it was the defendant himself who elicited the testimony or evidence from plaintiff’s witness on cross-examination, upon which the request is predicated, and it was he, himself, who offered the two exhibits (B and D) in evidence, and there can be no question with respect to the court’s power to award relief not asked for in the complaint or at trial so long as it is consistent with the case made in the complaint and shown to be appropriate by the evidence.
For the above reasons and in order that the parties be permitted to litigate all substantial questions, the motion should be and is granted.
Even had no motion to conform been made, the variance between the original pleading and the evidence not being fatal, the pleadings would be considered as if they had been amended, and the appellate courts will usually view the pleadings in this light should the case come up for review. (See Leonard v. Some Owners’ Loan Corp., 270 App. Div. 363, affd. 297 N. Y. 103; Thorne Neale & Co. v. New York So. Coal Term. Corp., 270 App. Div. 816, affd. 295 N. Y. 977.)
That the conformed pleading renders it a viable complaint for the relief demanded cannot be gainsaid. That the testimony and the evidence in the record substantiate the cause of action cannot be seriously disputed.
However, one important question still remaining is whether or not plaintiff may recover on his conformed pleading under all the facts and circumstances in the case.
Defendant attacks the legality of1 the agreement between plaintiff and the seller, citing in support of his contention section 175.7 of title 19 of the Official Compilation of Codes, Rules and Regulations promulgated by the Secretary of State (19 NTCRR 175.7) pursuant to section 91 (formerly § 20-a) of the Executive Law.
Section 91 reads as follows: “ Subject to and in conformity with the provisions of the constitution and laws of the state, the secretary of state may adopt and promulgate such rules *896 which shall regulate and control the exercise of the powers of the department of state and the performance of the duties of officers, agents and other employees thereof.”
In accordance with this provision, the following rule (175.7) was promulgated under the heading New York State’s Buies for the Guidance of Beal Estate Brokers and Salesmen:
“ [Compensation.] A real estate broker shall make it clear for which party he is acting and he shall not receive compensation from more than one party except with the full knowledge and consent of all parties.”
It is defendant’s contention, that plaintiff’s failure to comply with this rule or guideline vitiates his agreement for commission with the seller under the circumstances of this case (lack of knowledge and consent of the defendant).
Obviously, section 91 of the Executive Law apparently permits the adoption of rules and regulations, by the Secretary of State to regulate and control the exercise of such powers as are found in article 12-A of the Beal Property Law. This article empowers, inter alia, the Secretary of State to license real estate brokers, prohibits certain actions by them or their salesmen, and provides for hearings on complaints and for procedures to be followed with respect to violations. (See §§ 442-e and 441-c.)
It is debatable whether the provisions of article 12-A of the Beal Property Law authorize the Secretary of State by virtue of the powers given him under section 91 of the Executive Law to adopt rules and regulations affecting contracts between brokers, salesmen, and their principals. It is this court’s opinion that the said rules and regulations, as so adopted, are disciplinary in nature and that any breach thereof merely serves to act as a basis upon which proceedings for suspension or revocation of licenses may be initiated. The breach thereof does not, ipso facto, as contended by defendant, vitiate and render unenforceable the brokerage agreement between plaintiff and seller.
Moreover, and it is significant to note, defendant’s position in this case has been that he never employed plaintiff as a real estate broker and never agreed, expressly or impliedly, to pay him a brokerage fe.e. How can he now be heard to say that plaintiff’s agreement with the seller violated the rule or guideline promulgated by section 91 of the Executive Law (19 NYCBB. 175.7), since the court finds as a fact that there was no such agreement between the litigants 1 For the reasons stated above, the court finds that section 91 of the Executive Law has no application to the issue herein.
*897 It was undisputed that defendant had no knowledge whatever of the agreement between plaintiff and the seller which provided for payment of a commission by the latter to the former until the very day of trial itself.
Plaintiff, in the performance of his duties as a real estate broker, was required to exercise the utmost good faith and loyalty and not to act in any manner inconsistent with his agency or trust. (See Lamdin v. Broadway Surface Adv. Corp., 272 N. Y. 133; Wendt v. Fischer, 243 N. Y. 439; Grossman v. Herman, 240 App. Div. 525, affd. 266 N. Y. 249; John J. Reynolds, Inc., v. Snow, 11 A D 2d 653, affd. 9 N Y 2d 785.) It has been held that a broker who secretly represents both parties to a transaction cannot recover compensation from the party kept in ignorance of the dual employment. (Erland v. Gibbons, 176 App. Div. 552; Gracie v. Stevens, 56 App. Div. 203, affd. 171 N. Y. 658.) And, in Elco Shoe Mfrs. v. Sisk (260 N. Y. 100, 103), the court stated “We have here an illustration of the fact that no man can serve two masters with equal fidelity when rival interests come into existence. Agents are bound at all times to exercise the utmost good faith toward their principals. They must act in accordance with the highest and truest principles of morality.”
The court holds that plaintiff, having failed to disclose his request for a commission made to the seller before contract closing, and having failed to disclose the seller’s commitment made after contract closing to pay him a $5,000 commission upon title closing, did fail to act with the requisite uberrima fides toward the defendant and has thereby forfeited his right to said commission.
Instead of disclosure, there was suppression and concealment, and under said circumstances plaintiff’s complaint, as amended at the close of his case, is dismissed, with costs.
Defendant’s counterclaim was discontinued without costs at the close of the case.
Let judgment be entered in favor of the defendant, dismissing plaintiff’s complaint, with costs.