In the Matter of JANICE S. BIRNBAUM et al., as Coadministrators C. T. A. and Trustees of the Estate of BERNARD P. BIRNBAUM, Deceased, Appellants-Respondents, v SAUL I. BIRNBAUM, as Coexecutor of BERNARD P. BIRNBAUM, Deceased, Respondent-Appellant.

In the Matter of ILENE L. FLAUM, as Coadministrator of the Estate of Bernard P. Birnbaum, Deceased, Appellant-Respondent, v SAUL I. BIRNBAUM, as Coexecutor of Bernard P. Birnbaum, Deceased, Respondent-Appellant, et al., Respondent. JAY B. BIRNBAUM, Appellant-Respondent.

Fourth Department, May 11, 1990

**APPEARANCES OF COUNSEL**

*Fix, Spindelman, Turk, Himelein & Shukoff (Norman M. Spindelman* of counsel), for Janice Birnbaum and others, appellants-respondents.

*Mackenzie, Smith, Lewis, Michell & Hughes (Carter H. Strickland* of counsel), for Jay B. Birnbaum, appellant-respondent.

*Schlam, Stone & Dolan,* and *Bartlett, Pontiff, Stewart, Rhodes & Judge, P. C. (Richard J. Bartlett* and *Richard H. Dolan* of counsel), for Saul I. Birnbaum, respondent-appellant.

## OPINION OF THE COURT

DENMAN, J. P.

Petitioners are Janice Birnbaum, Ilene Flaum and Central Trust Company, who are, respectively, the suspended coexecutor and the temporary coadministrators of the estate of Bernard P. Birnbaum (hereinafter the estate). Respondent is Saul Birnbaum, the suspended coexecutor of the estate. Petitioners commenced these proceedings to remove Saul as coexecutor and to surcharge him for his self-dealing with respect to an estate asset consisting of a partial interest in a limited partnership known as North Shore Mart. Petitioners appeal and respondent cross-appeals from an order of Monroe County Surrogate's Court, which, following a reference of factual issues on respondent's accounting, confirmed the report of the Referee and made additional determinations on issues not addressed by the Referee. Insofar as pertinent to this appeal, the Surrogate ordered Saul to reconvey to the estate a 36.4285% interest in North Shore Mart; ordered that such reconveyance be in the nature of a limited partnership interest rather than a general partnership interest or tenancy in common; denied the estate's request for reconveyance of an additional 6.0715% interest in the partnership; awarded the estate a judgment of $1,152,645.82 plus interest, representing (after offset) the estate's interest (36.4285%) in amounts diverted by Saul from the partnership to himself and his wife; denied without prejudice the estate's claim to recover tax benefits (for partnership losses) that the estate would have realized but for Saul's misappropriation of its interest in the partnership; denied the estate's request to recover for the unnecessary interest expense incurred by the partnership as a result of Saul's diversion of partnership assets; deferred the estate's request for an award of attorney's and accountant's fees; denied the estate's request for an award of punitive damages; denied the estate's request for costs and disbursements; and ordered Saul to pay one half of the Referee's fees.

On appeal, the estate contends that it is entitled to recon-

veyance of a 42.5% interest in North Shore Mart; that such reconveyance must be in the form of a general partnership interest or tenancy in common; that it is entitled to a judgment equal to 42.5% of amounts diverted from the partnership by Saul; that the estate is entitled to other amounts, including a proportionate share of interest paid as a result of unnecessary borrowing by the partnership and compensation for tax benefits the estate would have realized but for Saul's misappropriation; and that it is entitled to additional relief, including attorney's and accountant's fees, punitive damages, Referee's fees, and costs and disbursements. On his cross appeal, Saul challenges the Surrogate's award to the estate of a money judgment and of an interest in the partnership at its present value.

We modify the Surrogate's order to direct a reconveyance to the estate of a 40.852012% limited partnership interest, and modify the various components of the money judgment to reflect that greater ownership interest on the part of the estate. Additionally, we modify to allow the estate to recover attorney's and accountant's fees, costs and disbursements, and Referee's fees. In all other respects, we affirm.

### GENERAL BACKGROUND

This proceeding arises out of an intricate scheme of self-dealing by which Saul Birnbaum misappropriated the estate's interest in North Shore Mart, a partnership that owns and operates a shopping center in Great Neck, Long Island. The background facts of this litigation appear in our prior opinion in this case *(Matter of Birnbaum v Birnbaum, 117 AD2d 409).*[1] In that opinion, we held that Saul was guilty of self-dealing in purchasing from the estate a 19.643% partnership interest owned by Bernard Birnbaum at the time of his death, and in fraudulently concealing an additional 16.7855% partnership interest that Saul nominally owned but that in fact belonged to Bernard.[2] We set aside the "release and discharge", by

1. Details of Saul's misappropriation of other estate assets, in particular its interests in shopping centers in Glens Falls, New York, and Cherry Hill, New Jersey, can be found in a subsequent opinion of this court *(Flaum v Birnbaum, 120 AD2d 183)* and in recent decisions of the First Department and the Court of Appeals *(Birnbaum v Birnbaum, 139 AD2d 462, mod 73 NY2d 461).*

2. The 16.7855% interest consisted of one-half share of a 33.571% interest previously owned by others (the "Firman interest"). As we found when the case was previously before us, the Firman interest, although

which Saul purported to purchase the estate's interest in the partnership, because of Saul's failure to obtain the beneficiaries' informed consent to the transaction;[3] imposed a constructive trust for the benefit of the estate on an aggregate 36.4285% interest in the partnership; ordered a reconveyance of that interest to the estate; and remitted the matter to the Surrogate for an accounting designed to "assess the value of [the estate's] interests and determine what adjustments are necessary to place [the estate] in the same position [it] would have been in had the misappropriation not occurred" *(Matter of Birnbaum v Birnbaum, supra,* at 420).

Pursuant to our order and to a subsequent order and decree of the Surrogate, Saul filed an accounting and supplemental accounting for the period 1974 through June 1987 during which he managed the partnership. Petitioners raised objections to the accountings, and a lengthy hearing was conducted before a Referee to resolve factual issues and to effectuate this court's order. As a result of that accounting and reference, additional acts of self-dealing by Saul have come to light. Those acts include Saul's 1979 purchase of an additional 12.143% partnership interest formerly owned by Jerome Ornstein. Although Saul made that purchase in his own name, he used partnership funds, i.e., funds belonging proportionately to the estate. Additionally, it was revealed that Saul diverted partnership funds, including funds belonging proportionately to the estate, to pay himself partnership distributions and management fees and to pay his wife, Victoria, leasing commissions. The findings of the Referee and Surrogate concerning those acts of self-dealing are not substantially challenged by Saul, and we would not disturb them in any event. The relevant facts will be set forth in the discussion of the various contentions raised by the parties.

THE EXTENT OF THE ESTATE'S INTEREST IN THE PARTNERSHIP

A primary contention of the estate is that, for the purposes of imposing a constructive trust, ordering a reconveyance, and

purchased in Saul's name alone, actually was purchased for the benefit of both brothers with partnership funds belonging equally to Saul and Bernard *(Matter of Birnbaum v Birnbaum,* 117 AD2d 409, 415).

3. We later discovered that Saul's purchase of the estate's 19.643% interest in the partnership was actually fraudulent inasmuch as it was made in consideration of a reduction in a nonexistent debt that Saul claimed the estate owed him *(Flaum v Birnbaum,* 120 AD2d 183, 187, 188-189, 195).

awarding a money judgment, the estate is entitled, as a consequence of Saul's purchase of the Ornstein interest, to a greater interest in the partnership than the 36.4285% interest awarded by the Surrogate. As we previously held, at the time of his death in 1976, Bernard had legal and beneficial interests in the partnership totaling 36.4285% *(Matter of Birnbaum v Birnbaum, supra)*. Saul's subsequent self-dealing (purchase of Bernard's legal interest and concealment of his equitable interest) left Saul with a 72.857% interest. The remaining 27.143% interest was owned by Jerome Ornstein (14.286%) and Lawrence Goldrich (12.857%). In 1979 Saul and Goldrich purchased Ornstein's interest. Of Ornstein's 14.286% interest, Saul obtained 12.143% and Goldrich obtained 2.143%. As established by the proof at the reference, the partners purchased the Ornstein interest entirely with partnership funds, viz., a $200,000 loan repaid by the partnership and an $85,000 certificate of deposit owned by the partnership.

The estate bases its claim for a greater interest in the partnership on the fact that Saul purchased the Ornstein interest with partnership funds, including funds that rightfully belonged to the estate. The estate asserts that it is entitled to an additional 6.0715% interest in the partnership, for a total interest of 42.5% (36.4285% plus 6.0715%). In seeking reconveyance of one half the interest purchased by Saul from Ornstein, the estate asserts that Saul and Bernard traditionally had participated equally in such buyouts. We cannot presume, as the estate contends, that if Saul had not deprived the estate of its ownership interest, the estate would have participated equally with Saul in the Ornstein purchase. Nonetheless, the fact remains that Saul made that purchase with partnership funds that belonged proportionately to the estate. We thus conclude that the estate is entitled to an additional 4.4235127% interest in the partnership. That figure is based upon the proportion of the Ornstein interest that Saul purchased with funds that rightfully belonged to the estate (12.143% × 36.4285%). Adding that interest to the interest that we previously held was owned by the estate, we find that the estate is properly entitled to reconveyance of a 40.852012% interest in the partnership (4.4235127% + 36.4285%). The order must be modified accordingly. Recomputation of the estate's interest in the partnership will affect the amount of the money judgment awarded to the estate, as will be discussed *infra*.

THE FORM IN WHICH THE ESTATE'S INTEREST
IN THE PARTNERSHIP IS TO BE RECONVEYED

A major point of contention between the parties concerns the precise nature of the interest to be reconveyed to the estate. In determining that issue, the Surrogate found that North Shore Mart was a limited partnership in which Bernard, at the time of his death, held both general and limited partnership interests. The Surrogate ordered Saul to execute a reconveyance of a 36.4285% limited partnership interest. The Surrogate made clear that, as a consequence of being awarded that interest in the partnership, the estate would receive a proportionate percentage of its present day value, and not merely, as Saul proposed, the value of Bernard's interest on the date of his death. The Surrogate declared that such result was compelled by principles of equity and by our decision imposing a constructive trust upon the partnership interest misappropriated by Saul. The Surrogate expressly held that this case was not controlled by principles of partnership law or by the provisions of the limited partnership agreement, which ordinarily would entitle the estate of a deceased partner only to an accounting and to an award of the value of the deceased partner's interest on the date of his death. The Surrogate nevertheless directed that the parties now follow those provisions of the partnership agreement that provide for termination of the partnership upon the death of a general partner. Accordingly, the Surrogate directed the estate to commence a partition proceeding to compel the surviving partners to dissolve the partnership and account to the estate in accordance with the 36.4285% formula.[4]

■ Both parties now challenge that aspect of the Surrogate's decision. The estate contends that it should not be awarded a limited partnership interest, but should be found to be a joint venturer in the business and a tenant in common of the shopping center property itself, or, alternatively, a general partner in the partnership. The estate bases its first claim on the fact that, shortly before Bernard's death, the partners, who were then Bernard, Saul, Ornstein and Goldrich, contemplated terminating the partnership agreement, substituting a joint venture agreement, and conveying the partnership property to the partners as tenants in common. The estate's argument must be rejected. Although Bernard executed the

---

4. The parties advise us that such proceeding has been commenced in Supreme Court, Nassau County.

joint venture documents before his death, they were not executed by all of the partners. Thus, following Bernard's death, North Shore Mart continued to be a limited partnership and continued to own and operate the shopping center as a partnership asset. Therefore, the Surrogate, in ordering a reconveyance, properly limited the estate to a partnership interest.

Similarly, the Surrogate properly rejected the estate's claim that it is entitled to a general partnership interest and, more particularly, that it is entitled to a voice in the dissolution and winding up of the partnership. Although Bernard was a general partner in North Shore Mart at the time of his death, it is well established that the representative of a deceased partner is not entitled to participate in or interfere with the continuation or winding up of the partnership by the surviving partners. The representative's only right is to demand an accounting from the surviving partners upon completion of the winding up of the partnership affairs *(Schwartz v Lois Assocs.,* 149 AD2d 307, 309; *Matter of Schwartzenberg,* 99 AD2d 969, 970; *Shubert v Lawrence,* 1 AD2d 654, *affd* 1 NY2d 914; *see generally, Rosen Trust v Rosen,* 53 AD2d 342, *affd* 43 NY2d 693). Since the Surrogate's order awarding the estate a limited partnership interest satisfies the estate's rights in that regard, there is no need to disturb that portion of the order.

■ Saul's challenge to this aspect of the Surrogate's order is more complicated and relies on provisions of the Partnership Law and of the limited partnership agreement. Saul does not challenge the Surrogate's determination awarding the estate a limited partnership interest, but contends that the Surrogate disregarded partnership principles in awarding the estate anything more than the value of Bernard's interest on the date of his death. Saul's reliance on the terms of the partnership agreement and on section 62 of the Partnership Law is misplaced. First, although article 15 (c) of the partnership agreement provides that the partnership will terminate upon the death of a general partner, and although articles 16 and 17 provide for the prompt dissolution and settlement of the partnership, those provisions were abandoned by the surviving partners following Bernard's death. Just as they had done in earlier instances in which partners died, the surviving partners did not dissolve the partnership but continued it while deeming the deceased partner's estate to have succeeded to a limited partner's interest. Saul clearly considered that the estate had succeeded to Bernard's interest, as shown by his

purchase of that interest. Under principles of waiver and estoppel, Saul is barred from attempting to invoke the dissolution provisions of the partnership agreement in a belated effort to limit the estate's recovery to the value of Bernard's interest at his death.

■ More fundamentally, in these circumstances, nothing in the Partnership Law limits the estate of a deceased partner to the value of that partner's interest on the date of death. To the contrary, Partnership Law § 73 provides that, when a partner dies and the business is continued without any settlement of accounts between the estate and the surviving partners, the estate "may have the value of [the decedent's] interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at [the estate's] option * * * in lieu of interest, *the profits attributable to the use of his right in the property of the dissolved partnership*" (emphasis supplied). Because the partners did not dissolve the partnership but continued it after Bernard's death, thus breaching their fiduciary duty to the estate to account for Bernard's interest, the estate is entitled to receive the value of Bernard's interest as determined on the date of dissolution or the date of judgment, at the estate's election *(see, Rosen Trust v Rosen, supra)*. Moreover, as expressly directed by the Surrogate, the estate is entitled to receive the profits attributable to Saul's use of the estate's interest in the partnership, including appreciation in the value of that interest *(see, Rosen Trust v Rosen, supra)*.

■ Finally, even if the Surrogate's decision contravened partnership principles (which it does not), this case is governed by principles of fiduciary obligation and constructive trust. As we held on the prior appeal, Saul is guilty of self-dealing in acquiring and/or concealing the estate's interest in the partnership *(Matter of Birnbaum v Birnbaum,* 117 AD2d 409, *supra)*. Facts that since have come to light in this litigation and in the parallel proceedings make clear that Saul's self-dealing rises to the level of actual fraud. Saul's fraud in divesting the estate of its interest in the partnership was compounded by his purchase of the Ornstein interest with partnership funds, including funds belonging proportionately to the estate, and by his diversion of approximately $3,000,000 in partnership assets to himself and his wife. Our prior decision and other authorities governing constructive trusts establish that, under these circumstances, the estate is enti-

tled to recover the present appreciated value of its misappropriated interest in the partnership. Contrary to Saul's argument, restoring the estate to the position that Bernard was in at the date of his death is not the objective of a constructive trust. "Thus if the defendant has made a profit through the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can be compelled to surrender the profit to the plaintiff. So also where the defendant wrongfully uses the property of the plaintiff in making a profit, he can be compelled to surrender the profit. The defendant will not be permitted to retain the profit in such cases even though there has been no loss to the plaintiff. The defendant should not be permitted to enrich himself by retaining the profit, and will therefore be compelled to surrender it to the plaintiff. In these cases, the effect of enforcing a constructive trust is not merely to put the parties in statu quo" (5 Scott, Trusts § 462.2, at 317-318 [4th ed 1989]).

The "profit" that the fiduciary must be ordered to surrender can include the appreciation in the value of the misappropriated property *(Matter of Rothko,* 84 Misc 2d 830, 872-876, *mod on other grounds* 56 AD2d 499, *affd* 43 NY2d 305; *see, Menzel v List,* 24 NY2d 91). As the Surrogate held in this case, "It would be totally untenable from an equitable and any other standpoint to permit benefits, which are substantial and impressive over the passage of this time, to inure to the perpetrator of the wrongdoing, in this instance Saul. Equity demands that the party aggrieved by the misconduct, in this instance the estate, be the beneficiary of the appreciation." Thus, we affirm that portion of the Surrogate's order directing Saul to execute a reconveyance of a presently valued limited partnership interest to the estate, but modify, as indicated *supra,* to award the estate a 40.852012% limited partnership interest.

### THE AWARD OF A MONEY JUDGMENT TO THE ESTATE AND THE COMPONENTS OF SUCH AWARD

Beginning in 1974, Saul became managing partner of North Shore Mart and in 1975 began to pay himself a management fee. Between 1976 and 1987, the partnership paid Saul $903,350, the bulk of which, approximately $750,000, was paid between 1984 and 1986. During that same period, Saul received partnership distributions totaling $396,727.19. Beginning in 1979, Saul hired Victoria Delet, also known as Victo-

ria Tree (later to become his wife), purportedly to serve as a leasing agent for the shopping center. Between 1979 and 1987, the partnership paid Victoria $1,024,500 in salary and commissions for her services. The bulk of those payments, approximately $950,000, was made between 1984 and 1986, including one payment of $450,000 made entirely from the proceeds of a loan that Saul took out in the name of the partnership for that purpose. Although much of the testimony at the reference focused on whether those payments to Saul and Victoria were legitimate, i.e., authorized by the partnership and earned by the recipients, the Referee and Surrogate ultimately concluded that it was irrelevant whether the payments were legitimate. The Referee concluded that, as constructive trustee, Saul was not entitled to charge payments to himself and his wife against the estate's interest in the partnership. Adopting that conclusion, the Surrogate awarded judgment to the estate in an amount equal to 36.4285% of the amounts received by Saul and Victoria without the consent of the estate, with interest from the date of such payments. In addition, the court awarded the estate judgment in an amount equal to the estate's 36.4285% share of the partnership funds used by Saul to purchase the Ornstein interest in his own name, plus interest from the date of that payment. The total amount awarded to the estate was $1,364,358.87 plus interest. As an offset against that amount, the estate was ordered to pay Saul $284,410.22, representing 50% of the amount (plus interest) spent by Saul to acquire the Firman interest, a purchase that we previously held to be one half for the benefit of Bernard. Totaling the various awards and offset, the Surrogate awarded judgment to the estate in the amount of $1,152,645.82 plus interest.

Saul's cross appeal consists primarily of a challenge to the propriety of that award. Saul contends that the payments were legitimate vis-à-vis the partnership, and that restoring to the estate a proportionate share of the payments is at variance with principles of partnership law. Saul's contentions are patently lacking in merit. First, as recognized by the Referee and Surrogate, whether the payments were legitimate is irrelevant to whether Saul, without the estate's consent, could charge those payments against the estate's interest in the partnership. In this regard, the recent decision of the Court of Appeals in *Birnbaum v Birnbaum* (73 NY2d 461, *modfg* 139 AD2d 462, *supra)* is controlling. There, in the context of Saul's partnership with Jay and Ilene in the Cherry Hill property,

the court held that Saul's payments to Victoria breached his fiduciary duty to Jay and Ilene. In so holding, the court reversed that portion of an order that upheld the payments as legitimate. The court affirmed the remainder of the order, which invalidated Saul's payments to himself.

With respect to Saul's second argument, it merely restates his contention that the estate is entitled, at most, to a partnership interest valued on the date of Bernard's death. As previously indicated, we reject that argument. To uphold the payments to Saul and Victoria as a charge against the estate's interest in the partnership would reward Saul for his misappropriation of the estate's interest, a result that would conflict with our prior decision and with settled rules governing an executor's fiduciary obligation.

Although the Surrogate's award of a money judgment to the estate is upheld in principle, certain adjustments are required. In accordance with our conclusion that the estate is entitled to reconveyance of a 40.852012% limited partnership interest, the order is modified to restore to the estate that greater proportionate interest in the sums diverted by Saul to himself and his wife. Additionally, in accordance with our conclusion that the estate is entitled to share proportionately in Saul's purchase of the Ornstein interest, the order is modified to delete the directive that Saul pay the estate a proportionate share of those estate assets that he used to purchase the Ornstein interest in his own name. The offset is unaffected by those modifications. Thus, the estate should be granted judgment as follows:

(a) regarding fees paid to Saul, 40.852012% of $903,350, or $369,036.63, plus interest;

(b) regarding payments to Victoria, 40.852012% of $1,024,500, or $418,528.84, plus interest;

(c) regarding partnership distributions to Saul, 40.852012% of $396,727.19, or $162,071.03, plus interest;

(d) offset to credit Saul for payments made by him to purchase the Firman interest, $284,410.22.

### THE ESTATE'S CLAIM FOR LOST TAX BENEFITS
### AND THE COSTS OF UNNECESSARY BORROWING

■ The Surrogate did not abuse his discretion in denying the estate's claim to be compensated for tax benefits it would have enjoyed (in the form of tax losses and tax credits) but for Saul's misappropriation of the estate's interest. In these cir-

cumstances, the estate's claim for lost tax benefits is too speculative to support recovery *(see, Farrar v Brooklyn Union Gas Co.,* 73 NY2d 802, 804). Similarly, we uphold the Surrogate's denial of the estate's claim to a proportionate share of the interest expense borne by the partnership in repaying sums borrowed by the partnership in order to make payments to Saul and his wife. The estate will recover with interest its proportionate share of sums diverted by Saul, and, to a large extent, the estate's collateral demand to be reimbursed for the consequent borrowing by the partnership would duplicate that recovery.

### THE ESTATE'S CLAIM FOR ATTORNEY'S AND ACCOUNTANT'S FEES

The estate claims that it is entitled to recover the attorney's and accountant's fees it incurred in uncovering Saul's self-dealing and pursuing its claims against him. The Referee deferred determination of that claim to the Surrogate, presumably because he believed that it was outside the scope of the reference. The Surrogate merely deferred the claim.

We see no reason to defer the claim, and hold that the estate is entitled to recover attorney's and accountant's fees. The courts have held consistently that an estate should not bear any expense as the result of a fiduciary's misconduct and, in numerous instances, have held a fiduciary liable for the attorney's fees and other expenses incurred by the estate in exposing his misconduct *(Matter of Campbell,* 138 AD2d 827, 829; *Parker v Rogerson,* 49 AD2d 689, 690; *Matter of Rothko, supra,* at 885; *cf., Matter of Garvin,* 256 NY 518, 521-522; *Matter of Hidden,* 243 NY 499). Contrary to Saul's contention, that rule does not conflict with *Matter of A. G. Ship Maintenance Corp. v Lezak* (69 NY2d 1). *Lezak* holds that attorney's fees are ordinarily not recoverable by the prevailing party against the losing party as an incident of litigation. *Lezak* does not concern the propriety of awarding attorney's fees as an element of damages. Accordingly, we remit that aspect of the case to the Surrogate for his determination of the amount of attorney's and accountant's fees to be awarded.

### THE ESTATE'S CLAIM FOR COSTS AND DISBURSEMENTS

The estate challenges that portion of the Surrogate's order that denied its request for costs and disbursements. CPLR 8101 provides that the party in whose favor a judgment

is entered is entitled to costs in the action unless otherwise provided by statute or unless the court determines, under all the circumstances, that to allow costs would be inequitable. Award of costs and disbursements is intended to reimburse a successful party for expenses incurred in pursuing or defending his rights in court *(Gabrelian v Gabrelian,* 108 AD2d 445, 446, *appeal dismissed* 66 NY2d 741), although complete success is not a requirement. Here, the Surrogate did not state the equitable considerations that compelled him to deny costs and disbursements to the estate. There can be no question that the equities favor the estate and that the estate was successful in the litigation. In these circumstances, we conclude that the estate is entitled to costs and disbursements, and we modify the order to grant such relief.

### THE ESTATE'S CLAIM FOR REFEREE'S FEES

The Surrogate directed the estate and Saul each to pay one half of the Referee's fees of $30,000. The estate contends that Saul should be ordered to pay all of the Referee's fees. We agree and thus modify the order to direct Saul to bear the entire $30,000 cost of the reference. Because the reference was made necessary by Saul's self-dealing, the equities favor the estate. Moreover, the estate largely prevailed on its claims against Saul. In accordance with the general rule that Referee's fees are a taxable disbursement (CPLR 8301 [a] [1]; *see, Rosen Trust v Rosen, supra,* 53 AD2d, at 365-366), the Referee's fees should be assessed against Saul *(see, Paramount Pictures v Brandt,* 276 App Div 1002, 1003; *Matter of Rothko,* 95 Misc 2d 492, 494).

### THE ESTATE'S CLAIM FOR PUNITIVE DAMAGES

Finally, the estate challenges the Surrogate's denial of its request for punitive damages. The estate contends that it is entitled to punitive damages because Saul has been found guilty of a breach of fiduciary duty rising to the level of actual fraud and because such conduct evinces such "a high degree of moral turpitude and * * * such wanton dishonesty as to imply a criminal indifference to civil obligations" *(Walker v Sheldon,* 10 NY2d 401, 405). Although we find that Saul's conduct amounts to actual fraud, we decline to disturb this aspect of the Surrogate's order. Imposition of punitive damages is discretionary, not mandatory *(Binghamton Plaza v Gilinsky,* 32 AD2d 994; *see generally,* 36 NY Jur 2d, Damages, §§ 173, 183).

Although the Surrogate did not give his reasons for refusing to award punitive damages, we cannot conclude that he thereby abused his discretion.

Accordingly, we modify the order appealed from to direct Saul to reconvey to the estate a 40.852012% limited partnership interest, presently valued; to award judgment to the estate in an amount consistent with the calculations set forth herein; to award attorney's and accountant's fees to the estate in an amount to be determined by the Surrogate upon remittitur; to award the estate costs and disbursements in the action; and to order Saul to pay the entire Referee's fee.

BOOMER, PINE, DAVIS and LOWERY, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed with costs to petitioners, and matter remitted to Monroe County Surrogate's Court for further proceedings, in accordance with the opinion of DENMAN, J. P.