*348 OPINION OF THE COURT
Herman Cahn, J.
Plaintiffs, Charles F. Gibbs (Gibbs) and Robert W. Sheehan (Sheehan), are attorneys who were formerly members of defendant Breed, Abbott & Morgan (BAM), a New York City law firm. They withdrew from the firm in July 1991 and joined Chadbourne & Parke (Chadbourne), another New York City law firm.
In this action, plaintiffs seek to recover various sums of money that they allege are due to them pursuant to the BAM partnership agreement. BAM interposed an answer and counterclaims which included defenses based on plaintiffs’ alleged breach of their fiduciary duties to BAM. BAM, in addition to asserting that the alleged breaches of fiduciary duty are a defense to plaintiffs’ claims, asserts that it is entitled to recover damages from plaintiffs by reason of their alleged breaches of fiduciary duty.
The issue of whether plaintiffs breached their fiduciary duties to BAM and its partners was severed and tried first before this court without a jury. In September 1998, this court issued a decision which determined that certain conduct of plaintiffs constituted breaches of fiduciary duty:
(1) Although Gibbs’ leaving BAM and moving to Chadbourne was not itself a breach of fiduciary duty, Gibbs’ action in persuading Sheehan to leave BAM was improper. The testimony showed that Gibbs’ actions in encouraging Sheehan to leave, and the way in which the leave was orchestrated, were done, at least partially, with the intention of crippling BAM’s trusts and estates (T/E) department.
(2) After they had agreed to join Chadbourne, but before they actually left BAM, Gibbs and Sheehan sent Chadbourne a memo relating to the personnel of the T/E department. The memo listed the names of the various individuals, the amounts of their salaries and, as to the associates, it listed further personal information. This information was confidential to BAM. When Chadbourne obtained the information, it had a competitive advantage in terms of its ability to offer employment to the other members of the T/E department. In fact, Chadbourne offered employment to most of the department, and the bulk of the members of the department left BAM shortly after the departure of Gibbs and Sheehan. The preparation and sending of the memo, combined with Chadbourne’s hiring of two of the three T/E associates, the two accountants *349 and one of the paralegals (the large majority of T/E personnel), constituted an “egregious” breach of fiduciary duty (decision, at 10, 11).
(3) When Gibbs and Sheehan left BAM, they took with them a “chronology file” or “desk file.” The chronology file contained a copy of every letter written by the particular attorney during the previous years. Although other copies of those letters were maintained in BAM’s regular client files, those copies were dispersed over many different files and places. By having the desk files, plaintiffs were able to work efficiently on client matters, while without such access, BAM was required to examine many different client files, which is a difficult and time-consuming task.
The threshold issue now before the court is whether plaintiffs’ breaches preclude them from recovery of any interest in the partnership, and the monies due to them from the partnership. As a general proposition, an agent, employee or fiduciary who acts adversely to the principal can forfeit his right to compensation (Interpool Ltd. v Patterson, 874 F Supp 616 [SD NY 1995]; Matter of Rothko, 84 Misc 2d 830 [Sur Ct, NY County 1975], mod 56 AD2d 499 [1st Dept 1977], affd 43 NY2d 305 [1977]). In Maritime Fish Prods, v World-Wide Fish Prods. (100 AD2d 81 [1st Dept 1984], appeal dismissed 63 NY2d 675 [1984]), a person employed as an executive for a fish company engaged in secret transactions involving the sale of dried fish. The Court held that the employee was prohibited from acting in a manner inconsistent with the trust placed in him and was required to exercise good faith and loyalty, and that, by reason of his misconduct, the employee had forfeited his right to compensation. Thus, an employee who has received secret profits has been held to forfeit his right to compensation (Lamdin v Broadway Surface Adv. Corp., 272 NY 133 [1936]). In Murray v Beard (102 NY 505 [1886]), the plaintiff, a timber broker, contracted with the defendant dealer to represent the dealer in bidding on certain lots of timber, and failed to disclose that he would be assisting other dealers with bidding. The Court held that because plaintiff had withheld material facts from the principal, he forfeited the right to compensation.
Maritime and Lamdin (supra) can be distinguished from the instant case in that they involved employees rather than partners. Murray (supra) can be distinguished from the instant case in that it involved fraud rather than the instant acts of solicitation of law firm personnel or the taking of desk files, both of which may be considered less egregious than acts of *350 fraud. In a number of cases, it has been held that a partner whose wrong causes the dissolution of a partnership does not forfeit his entire interest but is entitled to receive it, less damages caused by the breach (Staszak v Romanik, 690 F2d 578 [6th Cir 1982]). In St. James Plaza v Notey (95 AD2d 804 [2d Dept 1983]), defendants were both partners and employees. Although they received unlawful kickbacks and had to account to the partnership for those funds, the Court did not deprive defendants of their interest in the partnership.
In Meehan v Shaughnessy (404 Mass 419, 535 NE2d 1255 [1989]), a case involving a law firm, the court found that the counterclaim defendant partners had breached a duty by secretly obtaining consents of clients to transfer matters to their new firm. The court rejected a claim that by reason of the breach, the offending partners forfeited all rights under the partnership agreement. The court held that a fiduciary is not required to forfeit all compensation but need repay only that portion which was in excess of the value of his or her services.
The court concludes that Gibbs and Sheehan do not lose all their financial rights in BAM by reason of their breach of fiduciary duty. At oral argument, BAM acknowledged that Sheehan is entitled to recover his capital account in the partnership. Gibbs previously withdrew his capital account. The court finds that plaintiffs are both entitled to their respective shares of firm profits accruing until their respective departures from BAM. However, since after their departure, plaintiffs engaged in acts which severely damaged the ability of BAM to operate its trusts and estates department, the court will not award them their inventory interest, which would have included future profits. In summary, Sheehan is entitled to recover the sum of his capital account and his share of profits which accrued until his departure from BAM, less the damages sustained by BAM by reason of his breach of fiduciary duty. Gibbs is entitled to recover his share of profits which accrued until his departure from BAM, less the damages sustained by the firm by reason of his breach of fiduciary duty. Interest on all the above shall be paid from the date when the other BAM partners received their distributions of said sums.
The measure of damages for breach of fiduciary duty is the amount of the loss sustained, including lost opportunities for profit by reason of the fiduciary’s faithless conduct (105 E. Second St. Assocs. v Bohrow, 175 AD2d 746 [1st Dept 1991] [breach of duty involved an unauthorized mortgaging of real property]).
*351 Although this court did not find that Gibbs and Sheehan solicited any specific clients in violation of a fiduciary duty, cases involving diversion of business provide a methodology for arriving at a measure of damages. In Jones Co. v Burke (306 NY 172 [1954]), which involved a defendant’s solicitation of customers, the Court held that the plaintiff was entitled to recover the amount of the loss, including profits from accounts diverted by reason of defendant’s conduct. No higher degree of proof was required on damages than in any other part of the case. If damages cannot be ascertained with certainty, a party can place evidence before the trier of fact in order to make a reasonably (or best possible) accurate estimate. While an aggrieved party is required to show with certainty that it had some loss, it does not have to prove the precise amount with certainty, so long as it has a reasonably sound basis for computing the profits that it lost as a result of the other party’s actions (S & K Sales Co. v Nike, Inc., 816 F2d 843 [2d Cir 1987]).
In Stoeckel v Block (170 AD2d 417 [1st Dept 1991]), cited by Gibbs and Sheehan, plaintiffs, who were former employees of defendant, sought unpaid commissions allegedly due following the termination of their employment. The defendant counterclaimed for breach of fiduciary duty, alleging that plaintiffs had solicited its clients. The jury found that plaintiffs had breached their fiduciary duty but awarded no damages on the counterclaim. In affirming, the Appellate Division said that although defendant established a decline in profits subsequent to plaintiffs’ termination, which was the result of a majority of defendant’s clients utilizing the services of plaintiffs’ new enterprise, it was not established that this decline in business was due to plaintiffs’ wrongful conduct during the term of their employment.
However, upon a review of the evidence in the instant case, unlike the situation in Stoeckel (supra), the court finds that BAM proved that it did in fact lose business by reason of the instant plaintiffs’ conduct. This occurred despite the fact that BAM sought to mitigate its damages by attempting to rebuild the T/E department by hiring a new partner and two new associates, transferring another partner into the T/E department, and recalling Paul Lambert, the former head of the T/E department, from an ambassadorship in Ecuador. Under the circumstances, BAM can recover for lost profits for a reasonable period of time after the plaintiffs’ actions (McRoberts Protective Agency v Lansdell Protective Agency, 61 AD2d 652 [1st Dept 1978] [Court remanded case for a new trial on the is *352 sue of damages where the trial court had calculated the loss for one year rather than for a reasonable time]; S & K Sales Co. v Nike, Inc., supra [in a case involving breach of fiduciary duty, the appellate court upheld an award of lost profits for a five-year period, in light of the long-standing relationship that the aggrieved firm had with its clients]).
Defendants’ expert, John R Johnson, recommended that lost profits be calculated from July 1991, when Gibbs and Sheehan left the firm and took with them the majority of the T/E department, to November 1993, when BAM dissolved. This court finds that this is a reasonable amount of time for purposes of calculation of damages.
Johnson calculated BAM’s damages in several different ways.
In his first method of calculating damages, Johnson determined the fee income of BAM’s T/E department using the annualized or “average” billings for the period from January 1989 through July 1991. This came to $3,300,000 per year. He then calculated the direct costs of running the T/E department, including salaries and benefits for associates and staff, and variable costs associated with generating fees, such as overtime for staff and the use of office supplies. Johnson estimated that about 5% of billings were uncollectible. He concluded that 47% of the fee income was a direct or variable cost. He then subtracted the amount that BAM’s T/E department actually billed after plaintiffs left the firm, from the annualized billings, resulting in the amount of lost billings. The lost billings were then multiplied by 53% (100% less 47%), arriving at a conclusion that lost profits equalled $2,036,634 for the period of July 1991 through November 1993.
Where there has been a breach of fiduciary duty, the aggrieved party may recover profits earned by the wrongdoer (Defier Corp. v Kleeman, 19 AD2d 396 [4th Dept 1963], affd 19 NY2d 694 [1967]). Using a second method of calculating damages, Johnson took the fees collected by Chadbourne from clients formerly represented by BAM (multiplying by 58% rather than 53% because Chadbourne’s figures are for collections, so there is no need to adjust by 5% for uncollectibles). Since the average annual billings were $1,425,864, and the period involved was 2.4 years (July 1991 through Nov. 1993), Johnson calculated the gross collections figure to be $3,422,074. When that figure was multiplied by 58%, Johnson arrived at a lost profits number of $1,984,803.
Plaintiffs questioned whether Johnson’s use of BAM billing figures from 1989 and 1990 resulted in a fully accurate reflec *353 tion of BAM’s finances. Specifically, the Devine litigation matter resulted in substantial billings for those years. However, Johnson testified and the court accepted that large matters occasionally arise and that it was not unusual to include those matters in lost profits analysis. Moreover, in order to eliminate the possibility that 1989 and 1990 were atypical years, Johnson used a third method of calculating damages, using billing figures for 1991 alone. He “annualized” profits for the part of 1991 between the beginning of the year and the time that plaintiffs left the firm. The annualized billing was $3,300,000, approximately the same as that reached by Johnson using the years 1989 through 1991. In the end, Johnson determined the lost profit figure to be $2,036,634, using this methodology.
Plaintiffs contended that real estate, general litigation and corporate matters for which the T/E partners billed during 1989 and 1990 should have been excluded from the calculations. In a fourth method of calculating damages, Johnson started with a figure of $3,143,625, which represented the average annualized billings of 1989 and 1990, excluding those “non-core T/E matters.” He found that if not for plaintiffs’ breach, BAM would have had total gross billings of $7,544,700 between July 1991 and November 1993. Johnson then subtracted BAM’s actual billings covering the July 1991 to November 1993 time period, $4,033,295, from $7,544,700 and arrived at a total of $3,511,405. When this amount is multiplied by Johnson’s lost profit percentage of 53% ($3,511,405 X .53), BAM is found to have a total lost profit of $1,861,045.
Plaintiffs never sought to introduce expert testimony regarding calculation of damages. They did state, in effect, that if the court decided to award damages, the non-core T/E matters should not be included. In response, defendants contended that plaintiffs failed to take into account certain estate-related matters that originated in and were billed by partners outside the T/E department but did not enter into BAM’s calculations of lost billings. However, the court will give plaintiffs the benefit of the doubt and use Johnson’s fourth method, which excludes the non-core T/E matters. The court notes that all four methods of calculating lost profits for the period arrive at almost similar amounts. Thus, the largest amount is arrived at under the first method used by the expert, i.e., $2,036,634, while the smallest amount is arrived at using the fourth method, i.e., $1,861,045.
In light of the above, the court finds that Johnson’s calculations under the fourth method most reasonably reflect the damages sustained by BAM, and that BAM lost $1,861,045 in profits on account of plaintiffs’ breaches.
*354 Since there are two plaintiffs, the court must determine whether or not Gibbs and Sheehan are jointly and severally liable for the damages. It has been held that where two or more persons are in breach of a fiduciary duty, they are jointly and severally liable regardless of the benefits obtained by each by reason of the breach (Federbush v Federbush, 88 NYS2d 185 [Sup Ct, NY County 1949]; Forbes v Finkelstein, 7 Misc 2d 450 [Sup Ct, NY County 1957], affd 5 AD2d 825 [1st Dept 1958]). In one case, where a cofiduciary was found to have merely acquiesced in the active wrongdoing of another fiduciary, the court found that a lesser sum could be assessed against the passive fiduciary (Matter of Rothko, 56 AD2d 499 [1st Dept 1977], affd 43 NY2d 305 [1977], supra). In the instant case, Gibbs has been found to be in breach of fiduciary duty by reason of his recruitment of Sheehan, his furnishing to Chadbourne of information relating to key BAM personnel and his use of BAM’s desk files. Although Sheehan cannot be liable for having recruited himself, Sheehan does appear to have actively participated in, and accepted the benefits of, the attempts to recruit BAM personnel and the use of the desk files. The court therefore concludes that Gibbs and Sheehan are jointly and severally liable for their breaches of fiduciary duty.
In a case of breach of fiduciary duty, the aggrieved party is entitled to prejudgment interest (see generally, CPLR 5001; Howard v Carr, 222 AD2d 843 [3d Dept 1995]).
Defendants seek an award of attorney’s fees in connection with their recovery against plaintiffs on the counterclaim of breach of fiduciary duty. Generally, in the absence of contract or statute, attorney’s fees are not recoverable (Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1). In Matter of Birnbaum v Birnbaum (157 AD2d 177 [4th Dept 1990]), the Court did permit an estate to recover attorney’s fees expended in pursuing claims against those persons responsible for a breach of fiduciary duty. The Birnbaum rationale, that an estate should not have to absorb the financial loss occasioned by a breach of fiduciary duty, can reasonably be extended to nonestate matters. However, Birnbaum does not indicate that an award of attorney’s fees is mandatory in a fiduciary duty case. In Birnbaum, the Appellate Division recognized that in awarding fees, a court could consider the equities of the situation. In the instant case, plaintiffs and defendants had claims against each other arising out of the partnership relationship. Although plaintiffs have been found to be in breach of fiduciary duty, their conduct was not so egregious as to warrant an *355 award of attorneys’ fees. Accordingly, the application for attorney’s fees is denied.
Punitive damages are available in cases of breach of fiduciary duty, so long as a very high degree of moral culpability is exhibited (Giblin v Murphy, 73 NY2d 769 [1988]). As a general rule, courts are not inclined to award punitive damages unless a party has shown a high degree of moral turpitude and the wrong has been directed at the public generally (Vasilopoulos v Romano, 228 AD2d 669 [2d Dept 1996]; Rocanova v Equitable Life Assur. Socy., 83 NY2d 603 [1994]). In the instant case, the court does not find that such a threshold was reached. Although plaintiffs’ activities substantially damaged the ability of BAM’s T/E department to operate, the court does not find the degree of moral culpability or the harm to the public which would warrant a grant of punitive damages. Therefore, the court declines to award punitive damages in favor of defendants on the counterclaim.
CONCLUSION
(1) Plaintiff Charles Gibbs shall recover his share of the BAM profits accruing up to the end of July 1991;
(2) plaintiff Robert Sheehan shall recover his share of the BAM profits accruing up to the end of July 1991, plus his capital account;
(3) on their counterclaims, defendants shall recover against Charles Gibbs and Robert Sheehan the sum of $1,861,045, together with prejudgment interest and attorneys’ fees; and
(4) the issue of the amount of Gibbs’ share of the BAM profits and the amount of Sheehan’s share of the BAM profits, and the amount of Sheehan’s capital account, plus interest on all of the above, are referred to a Special Referee to hear and report with recommendations, except that, in the event of and upon the filing of a stipulation of the parties, as permitted by CPLR 4317, the Special Referee, or another person designated by the parties to serve as Referee, shall determine the aforesaid issue.