N. GIST LAMDIN, Respondent, *v.* BROADWAY SURFACE ADVERTISING CORPORATION, Appellant.

134

(Argued October 2, 1936; decided November 24, 1936.)

*Emil Weitzner, Samuel H. Kaufman* and *Eugene M. Parter* for appellant.

*Nathan April* for respondent.

CRANE, Ch. J. The plaintiff sues for the balance of salary due him as director of sales of street car advertising. The defense is that the plaintiff, during this period of employment, was unfaithful to his employer and made secret profits in violation of his duties. The Trial Term dismissed the complaint. The Appellate Division reversed on the law and reinstated a verdict of $8,750, with interest and costs. We agree with the Trial Term that the conceded facts justify the dismissal.

As cash business for street car advertising commenced to slow up because of the widespread depression, the defendant, through its president, Barron Collier, introduced a substitute for cash in selling advertising. A due bill, in the form of scrip or letter of credit, was to be used by hotels and restaurants in payment for advertising space. These due bills or letters of credit could be used by the public in the nature of money or as a medium in the payment for goods or services furnished by the issuer. When the system was inaugurated the defendant in receiving these due bills or scrip had to dispose of them in order to get real money. This was done through the medium of due bill brokers. The Associated Advertising Co., Inc., was the broker with whom the defendant did business, receiving for its due bills thirty per cent of their face value. This was the basic rate fixed by arrangement. The rates for car advertising were much higher to the customer who paid in due bills than to one who paid cash.

Naturally it was for the interest of the defendant to get as much cash as possible for these due bills and, although the increased cost of conducting business in this way was taken up in the charge for advertising which the customer had to pay, yet naturally the ability to procure advertising contracts depended in a measure upon the reasonableness of the advertising rates. Collier, therefore, in doing business in this way, was interested, financially interested, in getting as much cash as possible from the due bill broker or avoiding the taking of due bills

in the payment for advertising if instead he could get cash from the customer. Cash was the practice, due bills the exception.

It is at this point the plaintiff failed to protect his employer's interest. He put himself in a position where his own interests were advanced by procuring due bills instead of cash and, further, he took a commission on the side from the due bill brokers which might have gone to the defendant, or at least increased the basic rate at which the brokers bought the due bills.

The plaintiff, an employee of the defendant, was given charge of this due bill business. He had under him another employee of the defendant, named Benjamin H. Gordon, who received a flat salary of fifty dollars a week. The plaintiff proposed to Gordon that he drum up the due bill business for which he, Gordon, would be paid by the brokers five per cent on all due bill business secured by him, of which he, the plaintiff, would take one-half. This scheme was carried out, and the evidence shows that between June, 1933, and July, 1934, Gordon was able to pay and did pay to the plaintiff out of his commissions from the Associated Advertising Company, the due bill brokers, $5,282.86. These same due bills were discounted by these same brokers on paying to the defendant the flat rate agreed upon. In other words, the brokers were paying thirty to forty per cent for the due bills to the defendant and at the same time paying Gordon, an employee, five per cent, of which the plaintiff got one-half.

These matters are not in dispute, as the plaintiff and Gordon frankly tell about them. In justice to these men it may be said that a custom in the advertising business is suggested as the basis for the arrangement. The evidence failed to prove any such custom known to or binding on this defendant. The plaintiff says that Gordon was to do extra work by procuring these advertising contracts at night, but even this would not justify, in our opinion, such an arrangement as the plaintiff had made with him, in the absence of any knowledge upon

the part of the defendant amounting to acquiescence or agreement.

The fact that Mr. Lackey, one of the vice-presidents, may have known about it at one time in the course of the transactions, did not amount to an acquiescence or an agreement by the defendant itself. In the first place Lackey, as vice-president, had no authority to employ, discharge or make contracts for employment or compensation on behalf of the defendant. Secondly, Mr. Barron Collier, the president, had his personal dealings with the plaintiff in these matters and gave him his instructions regarding them. He was the dominant and controlling figure in this company, and the plaintiff so concedes.

On the whole case we are of the opinion that the plaintiff in this instance fell below the standard required by the law of one acting as an agent or employee of another. He is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal. (*Murray* v. *Beard*, 102 N. Y. 505; *Beatty* v. *Guggenheim Exploration Co.*, 223 N. Y. 294; *Wendt* v. *Fischer*, 243 N. Y. 439; *Elco Shoe Manufacturers, Inc.*, v. *Sisk*, 260 N. Y. 100, 104; *Byrne* v. *Barrett*, 268 N. Y. 199.) This rule was expressed in the *Murray* case as follows: "An agent is held to *uberrima fides* in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services. (Story on Agency, §§ 31, 334; Story's Eq. Jur. § 315; Ewell's Evans on Agency, 268; Dunlap Paley on Agency, 105, 106; *Carman* v. *Beach*, 63 N. Y.

97, 100.) It is an elementary principle that an agent cannot take upon himself incompatible duties, and characters, or act in a transaction where he has an adverse interest or employment. (*N. Y. Cent. Ins. Co.* v. *Nat. Pro. Ins. Co.*, 14 N. Y. 85; Ewell's Evans on Agency, 14; *Greenwood* v. *Spring*, 54 Barb. 375; *Neuendorff* v. *World Mut. Life Ins. Co.*, 69 N. Y. 389.) In such a case he must necessarily be unfaithful to one or the other, as the duties which he owes to his respective principals are conflicting, and incapable of faithful performance by the same person." (pp. 508, 509.) (See, also, *Trice* v. *Comstock*, 121 Fed. Rep. 620; *Little* v. *Phipps*, 208 Mass. 331; American Law Institute, Restatement of the Law of Agency, § 469, comment a.)

The judgment of the Appellate Division should be reversed, and that of the Trial Term dismissing the complaint affirmed, with costs in this court and in the Appellate Division.

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.