■ CALSPAN CORPORATION, Appellant-Respondent, v KENNETH R. PIECH et al., Respondents-Appellants. — Order affirmed, without costs. Memorandum: Upon examination of the entire record, we conclude that triable issues of fact exist which compel the denial of both plaintiff's motion for partial summary judgment and defendants' cross motion for summary judgment (see *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395). Concur — Hancock, Jr., Callahan, Doerr and Moule, JJ.

Simons, J. P., dissents and votes to grant partial summary judgment, in accordance with the following memorandum: This is an action seeking damages and other relief from defendants for unfair business practices and breach of an employee's fiduciary duty. Two theories of recovery are advanced by plaintiff: first, it contends that its former employee, defendant Piech, has been guilty of actionable disloyalty to it because he permitted his name and reputation to be used by a competitor, defendant Scipar, Inc., to plaintiff's disadvantage and second, it contends that all the defendants conspired to damage it by the same means and also by misappropriating plaintiff's trade secrets and property. Plaintiff seeks to recover from Piech $16,502.21, the wages it paid him from April 2, 1979, the date when his act of disloyalty occurred, until August 3, 1979, the date when he left plaintiff's employ and started working for defendant Scipar, Inc. It seeks to recover from all defendants the amount of profit defendant Scipar, Inc., earned on a government contract which plaintiff claims rightfully belonged to it and which it would have received but for defendant's wrongful acts. Special Term denied cross motions for summary judgment. As I interpret its decision, it held that plaintiff had no right of recovery on its first theory and that there existed questions of fact preventing summary judgment to either side on the second theory. I agree that plaintiff is not entitled to summary judgment on the causes of action which seek to require defendants to disgorge the contract profits earned. I disagree with Special Term, however, that plaintiff has no right to recover wages from Piech. It is entitled to recover on that cause of action because of Piech's disloyalty quite apart from whether he and his codefendants are guilty of misappropriating property or secret information of Calspan. Moreover, I disagree with the majority because I not only believe plaintiff states a cause of action for disloyalty on its first theory, I think it has established its right to recover as a matter of law. Defendant Dr. Piech is an accomplished theoretical physicist and a recognized expert in the field of photometric image processing and analysis. He was employed by Calspan's predecessor in 1967 and continued with the company until his resignation in August, 1979. During that time he conducted numerous sophisticated research programs for various government agencies and he was highly regarded within the intelligence and defense community. Immediately prior to his resignation from Calspan he was serving as the "principal investigator", or senior project scientist, for several research and development contracts awarded to Calspan by the United States Defense Advanced Research Projects Agency (DARPA) at the Rome Air Development Center. In March, 1979 DARPA requested Calspan to submit an informal or "unsolicited" proposal for further research designed to extend and integrate existing image processing and material identification techniques into a computerized, unmanned missile identification and guidance system for use with "cruise" missiles. With the approval of Calspan management, such a proposal was prepared by Piech and other Calspan scientists and submitted to DARPA on Calspan's behalf on or about April 10, 1979. The proposal stated that Piech would serve as the project's principal investigator, or project leader, if the contract was awarded to Calspan. For some time prior, however, Piech had been discussing with defendant Kinzly, president of defendant Scipar, Inc., and a former college classmate and coemployee of Piech at Calspan, the possibility of Piech's leaving Calspan and joining Scipar. These discussions came to a head in February and March, 1979 and by letter dated April 2, 1979, Piech formally accepted an offer to join Scipar the following August. Piech testified that at that time he was working on Calspan's proposal for DARPA, and Kinzly knew he was, and that at that time he, Piech, assumed that Scipar intended to bid on the same program and was preparing a

competing proposal. In fact, it was his testimony that when he accepted Scipar's job offer, he "assumed" he could be in charge of the DARPA project after it received the contract. When Scipar's proposal was submitted to DARPA on April 4, 1979 it stated that Piech intended to join Scipar in August, 1979 and that "Dr. Piech will serve as Project Engineer for the proposed effort and will be responsible for the day to day performance of the technical effort, including liaison with the government and other contractor personnel." Dr. Piech's letter of April 2 confirming his employment was attached. Piech testified that he knew that his letter of April 2 would be used by Scipar to demonstrate Scipar's "corporate capability", i.e., to prove that Scipar had the technological expertise and personnel to complete the program. Notwithstanding all this, Piech did not inform Calspan until June 25 that he intended to join Scipar August 3 and plaintiff did not learn until September that he had forwarded a commitment letter to Scipar on April 2 or that he acquiesced in use of this letter as part of Scipar's bidding proposals. After plaintiff's and Scipar's proposals had been received by the Defense Department in April, the officer in charge of DARPA contacted Piech and told him that his name appeared on both of them. (At some points during his pretrial testimony Piech claimed that he did know that his commitment letter would be used in the Scipar proposal. At the very least he knew it was so used in mid-April, 1979, however, after this conversation.) He also told him that plaintiff's proposal was "too high". Piech advised the contract officer that the only way to reduce Calspan's proposal was to remove high-cost labor, namely, Piech, and a second Calspan proposal was subsequently submitted to DARPA on April 23 with Piech's name removed from it. Scipar was awarded the DARPA contract and executed it August 3, 1979. Piech became associated with defendant Scipar as a vice-president on the same day. The majority contend that these facts are unresolved because Piech's testimony is uncertain and contradicting on several points. His testimony certainly contains evasions and quibbles but his dissembling should not obscure the fact that he admitted sufficient facts to establish plaintiff's right to recover. Under broadly stated rules of law, an employee may not act in any manner inconsistent with his employment and he is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties (*Lamdin v Broadway Surface Adv. Corp.*, 272 NY 133, 138-139; *Murray v Beard,* 102 NY 505, 508; see, also, *Elco Shoe Mfrs. v Sisk,* 260 NY 100, 103-104). An employee who is faithless is generally disentitled to recover his compensation and it makes no difference that the services were beneficial to the employer or that it suffered no provable damages as the result of the employee's disloyalty (*Feiger v Iral Jewelry,* 41 NY2d 928; Restatement, Agency 2d, § 469). Unless the terms of employment are otherwise, the employee must act solely for the benefit of his employer in all matters connected with the employment (see Restatement, Agency 2d, § 387). He may not compete with his employer, directly or indirectly, concerning the subject matter of his employment (Restatement, Agency 2d, §§ 391, 393, 394). Notwithstanding these general duties, an employee, while working for another may engage in a variety of activities in preparation for further employment which may result in his competing with his present employer. Special Term held that Piech's conduct here was not actionable because it did not go beyond the permissible stage of preparation. It noted that he was entitled to talk to the codefendants while employed by plaintiff and to change his employment at will, even by forming or joining a competing business. There can be no argument with that; a substantial body of case law holds as much. What Piech could not do, however, was engage in conduct inconsistent with plaintiff's best interests. Most certainly he could not solicit his employer's customers during his employment (see *Jones Co. v Burke,* 306 NY 172; *C-E-I-*

*R, Inc. v Computer Dynamics Corp.*, 229 Md 357; Restatement, Agency 2d, § 393, Comment *e*), and we should not permit him to do so indirectly, and excuse his conduct in knowingly permitting Scipar to use his name when seeking the same contract his employer was bidding on. Manifestly, Piech was a key part of the DARPA proposal. In this day, when huge sums of government money are available to high technology firms and universities in the form of research and development contracts and grants, the reputation and prestige of company or university employees is not a negligible factor. Since the government is granted discretion in awarding such contracts and grants and it is not required to contract with the lowest responsible bidder, the scientist-personnel available to the bidder may well be the determining factor in deciding which proposal will be accepted. Indeed, it might well be argued that government procurement officers are more concerned with the names and reputations of the people available to the contractor than with the contractor for which they work. Thus, Piech's actions were the full equivalent of direct solicitation of plaintiff's business because while working for plaintiff he allowed his name, his prestige and his rapport with the government procurement officers to be used as a "bidding chip" by a competitor to solicit further business, the extension or refinement of the technical system that the employer was then developing (see *C-E-I-R, Inc. v Computer Dynamics Corp., supra*). Indeed defendants engineered the transfer so smoothly that the DARPA program development barely skipped a beat, the execution of the new contract by Scipar and Piech's employment by Scipar occurring the same day. That is not to say that the use of Dr. Piech's name caused plaintiff to lose the contract or defendant Scipar to gain it. That is a matter yet to be proved. But it is not necessary that plaintiff prove Piech's conduct caused actual injury to it to sustain this cause of action. It is enough that his actions were contrary to the best interests of his employer and that they "might work injury * * * or deprive it of profit or advantage which his skill, knowledge and ability might personally bring to it or enable it to realize in the responsible exercise of its power" (*Central Ry. Signal Co. v Longden*, 194 F2d 310, 318; see, also, *Lamdin v Broadway Surface Adv. Corp., supra; Murray v Beard, supra*). Defendants contend that there are reasonable and innocent explanations for all of this and that none of it was of much consequence in the bidding process anyway. The majority agree to the extent that they believe bad faith is a necessary element of the cause of action and presents a question of fact. It is difficult to imagine how Piech could have been acting in good faith, but his good or bad faith is immaterial in any event. Piech was obligated to disclose to plaintiff his relationship with Scipar and the use of his name on Scipar's proposal whether his failure to do so was motivated by bad faith or not (see *Central Ry. Signal Co. v Longden, supra;* 1 Mechem, Agency [2d ed], §§ 1207, 1353; Restatement, Agency 2d, §§ 381, 391). Finally, the simple answer to defendant's contention that use of Piech's name was of little consequence is that the government apparently thought the identity of the proposed project leader was important because the bid specifications required that he be named in the proposal. The parties apparently thought it was important because his name was included in both proposals (five times in Scipar's proposal). If more is needed to prove the point, the government contract, when it was awarded, contained a clause stating "In the event that the contractor [Scipar] ceases to furnish the services of Dr. Piech [it] shall immediately notify the contracting officer." I would grant plaintiff partial summary judgment against defendant Piech in the amount of $16,502.21. (Appeals from order of Supreme Court, Erie County, Bayger, J. — partial summary judgment.) Present — Simons, J. P., Hancock, Jr., Callahan, Doerr and Moule, JJ.