■ GEORGE V. WHALEN, Respondent, v CONTRACTING PLUMBERS COOPERATIVE RESTORATION CORPORATION, Appellant. — In an action to recover damages for breach of a contract of employment, the defendant appeals from a judgment of the Supreme Court, Kings County (Scholnick, J.), dated February 16, 1983, which is in favor of the plaintiff and against it in the principal sum of $125,443.

Judgment affirmed, with costs. No opinion. Thompson, Weinstein and Eiber, JJ., concur.

Lazer, J. P., dissents and votes to reverse the judgment appealed from and to dismiss the complaint, with the following memorandum. Claiming he was discharged without cause, plaintiff brought an action for breach of his employment contract and has obtained a judgment in the principal amount of $125,443 against his employer.

Although the majority believes the judgment was warranted and has voted to affirm, I view plaintiff's conduct as having been grossly disloyal to his employer. Therefore, I dissent and vote to reverse the judgment and dismiss the complaint.

The defendant, Contracting Plumbers Cooperative Restoration Corporation (Restoration), was formed by a group of associations of plumbing contractors in 1968 to assist their contractors in performing their obligations to repave street openings inci-

dental to subsurface work. Although plaintiff was elected executive vice-president when Restoration was incorporated, he continued to serve as Executive Director of the Contracting Plumbers Association of Brooklyn and Queens, Inc. (Brooklyn-Queens Association) and was employed by other entities affiliated with that association. Plaintiff's initial service as Restoration's executive vice-president was without a written contract but in 1972 he obtained a five-year contract which was renewed for another five-year term.

In 1970, Restoration leased a suite in a Brooklyn building and shared the space in it with the Brooklyn-Queens Association and its affiliates. Although Restoration was the lessee and the other occupants were subtenants, rent was apportioned among all the occupants on the basis of the space used by each. In 1975, the landlord renewed the lease with Restoration for an additional five years.

In 1979, the relationship between Restoration and the plaintiff had deteriorated to such an extent that in March of that year Restoration's Board of Directors voted to dismiss the plaintiff and threatened to evict the other organizations that employed him and shared space in the suite. Although the board withdrew its dismissal resolution for lack of a suitable replacement for plaintiff, he decided to protect his other employers from eviction and, during the same month, prevailed upon the landlord, Chicago Title Corporation (Chicago Title), to execute a lease of Restoration's suite to the Brooklyn-Queens Association as tenant. The new lease, identical in terms to the one Chicago Title had given to Restoration and covering the same space, was backdated to the 1975 renewal date of Restoration's lease. When Restoration discovered the existence of the new lease, it dismissed plaintiff in August, 1979 for diversion of a corporate asset and for the arbitrary handling of grievances, improper expense account claims and creation of a new local union chapter to compete with Restoration. This action then ensued.

Following a bench trial, Trial Term found that none of the grounds asserted by Restoration constituted cause for dismissal and awarded plaintiff judgment in the principal sum of $125,443. With respect to the charge of diversion of corporate assets, the court concluded that plaintiff had broad authority to negotiate leases and that his action was reasonable to protect the interests of the entities which shared office space with Restoration. I believe this was error.

An officer or employee is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties (*Hadden v Consolidated Edison Co.*, 45 NY2d 466; *Jones Co. v*

*Burke,* 306 NY 172). If he proves disloyal, he forfeits his right to compensation (*Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133; *Maritime Fish Prods. v World-Wide Fish Prods.,* 100 AD2d 81). As part of his duty of undivided loyalty to his employer, an employee may not profit or further his private interests at the employer's expense (*Schachter v Kulik,* 96 AD2d 1038; *Limmer v Medallion Group,* 75 AD2d 299). He certainly may not divert valuable assets from a corporation that employs him (*Aronoff v Albanese,* 85 AD2d 3; *Bruno Co. v Friedberg,* 21 AD2d 336).

In this case, the asset diverted or attempted to be diverted was the lease that had conveyed to Restoration a leasehold interest in the property owned by Chicago Title. Since the other entities in the suite had no written agreements with Restoration, their subtenancy relationships with Restoration constituted nothing more than subtenancies at will terminable on 30 days' notice (see Real Property Law, § 228; *Fisher v Queens Park Realty Corp.,* 41 AD2d 547). Whether Chicago Title's execution of another lease to plaintiff's other employers at his behest constituted a novation that superseded the original lease with Restoration (see *Miles v Houghtaling,* 32 AD2d 714; *Shubin v Surchin,* 27 AD2d 452), whether it merely elevated the status of the Brooklyn-Queens Association from subtenant to a tenant in common with Restoration (see *Jemzura v Jemzura,* 36 NY2d 496), or whether it had any legal validity at all, we need not now determine. What is significant is that this conduct of Restoration's executive vice-president intended to reduce Restoration's control of the property and to deprive it of the right to terminate the tenancy of its subtenants. It is the disloyalty itself, and not its consequences to the employer, which bars the employee from compensation (*Feiger v Iral Jewelry,* 52 AD2d 524, affd 41 NY2d 928).

Faced with a conflict between the interests of his various employers and aware that Restoration was dissatisfied with his services, plaintiff placed his own interest and the interests of his other employers above those of Restoration. While plaintiff's action might not have constituted disloyalty had he disclosed his intentions to Restoration's board and obtained their acquiescence (see *Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133, 138, *supra; Wendt v Fischer,* 243 NY 439), he chose to act without the prior knowledge or consent of the board. His conduct was clearly disloyal to Restoration and categorically inconsistent with his obligation of undivided loyalty. Therefore, Restoration was justified in terminating his employment.

Accordingly, I dissent and vote to reverse the judgment appealed from and to dismiss the complaint.