■ GASSMAN & GASSMAN, Appellant, v MARK SALZMAN, Respondent.—Judgment, Supreme Court, New York County (Oreste Maresca, J.), entered March 14, 1984, after a nonjury trial, which, *inter alia*: (1) dismissed the complaint, and (2) awarded defendant the sum of $5,760 in satisfaction of his counterclaims, is reversed, on the law and the facts, judgment is vacated, the complaint is reinstated, liability is found in

favor of the plaintiff, the counterclaims of the defendant are dismissed, and the matter is remanded for an accounting, with costs.

Plaintiff is a New York City accounting firm. In or about 1969, at a time when defendant's uncle was the principal managing partner of plaintiff, defendant, while still in college, was hired by plaintiff as a junior accountant. By 1976, defendant had been promoted to the position of plaintiff's office manager, and, among other responsibilities, he could hire, fire and delegate client assignments to staff accountants. On or about April 17, 1978, plaintiff terminated defendant as an employee.

Soon thereafter, in July 1978, plaintiff instituted the instant action for injunctive relief, monetary damages and an accounting against defendant. The complaint alleges, *inter alia,* that defendant breached, as an employee, his fiduciary obligation, committed conversion and diverted income and business away from plaintiff, both during and subsequent to the time that plaintiff employed him. In response, defendant served an answer which contained counterclaims.

A nonjury trial resulted in Trial Term dismissing the plaintiff's complaint and finding in favor of defendant to the extent of $5,760 in respect to his counterclaims.

We disagree.

Our review of the record indicates that the plaintiff proved by overwhelming evidence that the defendant was a faithless and disloyal employee who, *inter alia,* improperly diverted to himself income and accounting business from plaintiff's clients to which only the plaintiff was entitled. The defendant: (1) admitted, at his examination before trial, that he was aware of the plaintiff's policy, as expressed in its office manual, that "[n]o member of this staff shall [engage] in an outside gainful occupation or render technical or professional service that could be rendered by the [plaintiff] firm"; and, (2) admitted, in his trial testimony, that the plaintiff's policy prohibiting outside employment by staff members had been discussed with all staff members. Recently, we had occasion in *Maritime Fish Prods. v World-Wide Fish Prods.* (100 AD2d 81 [1st Dept]) to review the duties owed by an employee to his employer, and the consequence to the employee of breaching such duties. In pertinent part, we stated in *Maritime Fish* (*supra,* at p 88): "It is a firmly established principle in the law of this State that, '[An employee] is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound

to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal' (*Lamdin v Broadway Surface Adv. Corp.*, 272 NY 133, 138; see, also, *Western Elec. Co. v Brenner*, 41 NY2d 291, 295; *Murray v Beard*, 102 NY 505)."

Accordingly, based upon our application of the principles set forth in *Maritime Fish* (*supra*) to the facts in the instant case, we find liability in favor of plaintiff, dismiss the defendant's counterclaims, and remand for an accounting. Concur—Ross, Asch, Bloom and Rosenberger, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I would affirm the well-reasoned decision of Maresca, J. With the possible exception of the four individual income tax returns Salzman prepared and the one client he serviced, no evidence was presented that clearly demonstrated that the defendant perpetrated any improprieties.

Two of the accountants at the firm maintained outside clientele, so Salzman could not have notice that this practice was not allowed. Although this practice was eventually proscribed in the personnel manual, that is insufficient for the purpose of this litigation as the manual was not promulgated until some years after Salzman began working for the firm.

As to the assertion that Salzman "stole" clients from the firm, this too is unsupported. Plaintiff's managing partner, defendant Salzman's uncle, himself admitted that the firm had 2,000 to 3,000 clients and he could not keep track of all of them. On the stand, he could not name any specific clients that were diverted except for the aforementioned income tax returns and one client's newly formed subsidiary, Embassy Enterprises, Ltd. However, as to the tax returns, Salzman's explanation, that the clients were too small and the firm rejected them, is credible, especially in view of the very small fees involved. As to Embassy, plaintiff's claim that Embassy was not reported as a client is belied by the fact that he discovered a file on them shortly after Salzman left the firm. Salzman served as treasurer of Embassy from its inception. It was shown that for every check made out by Embassy to Salzman, there was one that was made out at the same time for the plaintiff. That Salzman continued to service the client after his departure is no different than satisfied clients following one that has well served them.

Salzman was not dismissed for professional misconduct. It

appears that his departure stems from an interfamily conflict. That defendant was not immediately terminated, but instead asked to continue through tax season, lends credence to Salzman's assertion that he resigned from the firm. If Salzman had been fired, allegedly for diverting clients from the firm, why would he be left in a position to divert more clients?

In short, more than the bare allegations presented at trial would be required to prove plaintiff's case. The decision of Maresca, J., should be affirmed.