### INTERPOOL LIMITED, Plaintiff,

v.

### Barry PATTERSON, et al., Defendants.

### No. 89 Civ. 8501 (LAK).

United States District Court,
S.D. New York.

Jan. 26, 1995.

Lloyd Clareman, New York City, for plaintiff.

William Roth and Lisa Frey, Kelly & Roth, New York City, for defendants George Novo, Sumo Enterprises, Inc., Dockside Intern. Co., Miami Container Repair Co., and Intermodal Services of Florida, Inc.

Keith L. Flicker and John Karpousis, Flicker, Garelick & Associates, New York City, for defendants Richard Cuneo, Genco Associates, Inc. and Container Options, Inc.

## OPINION

KAPLAN, District Judge.

This is an action for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, and breach of fiduciary duty against eight individual and corporate defendants.

In brief summary, Interpool Ltd., a publicly held company engaged in the intermodal equipment leasing business,[1] claimed that Barry Patterson and Richard Cuneo, two of its former sales agents, each of whom had been charged with selling used shipping con-

tainers on Interpool's behalf, used their positions to enrich themselves at Interpool's expense by selling Interpool's equipment to companies in which they had undisclosed interests and appropriating to such companies leasing opportunities that belonged to Interpool. The other six defendants consisted of an individual whom they allegedly recruited into the scheme and five corporations in which one or all three of the individual defendants had interests.

The jury found that defendants had committed violations of 18 U.S.C. §§ 1962(c) and (d) and common law fraud, that Cuneo and Patterson had breached their fiduciary duties to Interpool, and that the other defendants had aided Cuneo and Patterson in those breaches. Judgment was entered on the verdict against all defendants, jointly and severally, in the aggregate amount of $4,370,000 for compensatory damages. In addition, the jury awarded punitive damages on the state law claims against Cuneo, Patterson and defendant George Novo in the aggregate amounts of $150,000, $30,000 and $15,000, respectively, and judgment was entered against each of them, severally, for those amounts. The Court subsequently awarded plaintiff attorneys' fees pursuant to 18 U.S.C. § 1964 in the amount of $299,805.18 and prejudgment interest on the state law recoveries.

The matter now is before the Court on the motion of defendants Richard Cuneo, Genco Associates, Inc. ("Genco"), and Container Options, Inc. (collectively, the "Cuneo Defendants") for a new trial pursuant to Rule 59.

### The Motion for a New Trial

The Cuneo Defendants seek a new trial on several grounds.

*Dismissal of Trial Juror*

Juror no. 8 was excused on the seventh day of trial, prior to the close of the evidence. He had indicated during jury selection that he had a commitment to make an important business trip in the future, but he was not challenged either for cause or peremptorily. That was understandable, as the parties then estimated that the trial would be

---

1. Intermodal equipment includes large shipping containers used in ocean shipping and the chas-

sis and trailers on which they are transported when on land.

completed prior to the date of the projected trip.

The trial took longer than anticipated. Among other things, it was suspended for a day to accommodate a personal request of counsel for the Cuneo Defendants. As the date of juror no. 8's trip approached, he asked to be excused, essentially on grounds of hardship. The Court consulted with the parties, examined the juror in their presence, and initially declined to excuse him. (Tr. 915–22) The juror, however, became quite upset. It became apparent from his behavior in the courtroom—which included audible sighs, restlessness, and inattention to the evidence—that the juror's preoccupation with his personal concerns was so great that he was unlikely to fulfill his responsibilities as a juror in an appropriate manner. His demeanor suggested also that his presence would adversely affect deliberations. The Court therefore excused him over defendants' objections. (Tr. 1010–11, 1065–71)

Fed.R.Civ.P. 47(c) provides that "[t]he court may for good cause excuse a juror from service during trial or deliberation." Nevertheless, the Cuneo Defendants assert that the reasons for excusing the juror are not within Rule 47(c) and that the Court's action therefore was improper as a matter of law. (Flicker Aff. ¶ 4) This aspect of the motion is denied for two reasons.

First, some time after the Court's initial refusal to excuse the juror, plaintiff's counsel, who initially had objected to excusal, voiced concern about the juror's reaction. Counsel for the Cuneo Defendants responded, "I don't want to take a position. It's your [the Court's] call." (Tr. 1010) Later, when the Court indicated at the sidebar that it would excuse the juror, counsel for the Cuneo Defendants stated, "Sir, if I may, if that's your decision, fine." (Tr. 1065) Although the Cuneo Defendants thereafter objected to excusing the juror (Tr. 1066–67, 1069–70), their counsel did not suggest that the Court lacked the power to take that action as a matter of law. Having thus taken the position that the matter was committed to the Court's discretion, the Cuneo Defendants will not be heard to argue otherwise.

Second, the contention that the Court lacked power to excuse the juror for these reasons is incorrect. The Advisory Committee note to the 1991 amendment to Rule 47, which added paragraph (c), states that the "provision makes it clear that the court may in appropriate circumstances excuse a juror during deliberations without causing a mistrial." It gives sickness, family emergency and juror misconduct as examples of appropriate reasons, but does not purport to be exhaustive. *A fortiori*, a juror may be excused prior to deliberations on these and analogous grounds. Moreover, the case law under Fed. R.Crim.P. 24(c) establishes that the determination of whether to excuse a juror, either during trial or deliberations, lies within the discretion of the trial court. *E.g., United States v. Simpson*, 992 F.2d 1224, 1227–28 (D.C.Cir.), *cert. denied sub nom. Simpson v. United States*, —— U.S. ——, 114 S.Ct. 286, 126 L.Ed.2d 236 (1993) (illness); *United States v. Gambino*, 951 F.2d 498, 502–03 (2d Cir.1991), *cert. denied sub nom. D'Amico v. United States*, —— U.S. ——, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992) (lateness, inattention, and family commitments); *United States v. Smith*, 918 F.2d 1501, 1511–12 (11th Cir. 1990), *cert. denied sub nom. Hicks v. United States*, 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991) (juror vacation). The hardship or inconvenience imposed upon a juror when a trial runs past its anticipated ending date and concern for the appropriate functioning of the jury's deliberative process, free of the distractions of a participant angry and resentful at his or her unexpected and compulsory presence, are exactly the sort of considerations that a trial court must consider in these circumstances.

*Exclusion of Evidence*

The Cuneo Defendants next complain that the Court erred in excluding evidence of "industry standards and practices and Interpool's own standards and practices regarding undisclosed self dealing and entities with common ownership and arguably competing financial interest." (Flicker Aff. ¶ 5) The motion papers are none too clear as to exactly what these defendants claim was excluded erroneously, but they refer to pages 478–83, 542–43, 566–67 and 570–71 of the transcript. The argument is wholly without merit.

The issue of alleged self-dealing between Interpool and individuals other than Cuneo first emerged during opening statements, when Cuneo's counsel asserted that Interpool and its chief executive officer, Martin Tuchman, "trade with interested entities and ... say they can reach fair market prices," but complained that Interpool did not take that position with Cuneo. (Tr. 54)

On the third day of the trial, prior to calling Tuchman and other Interpool witnesses, plaintiff moved *in limine* to exclude any evidence concerning related party transactions other than those involving defendants. (Doc. item 68) It contended that all of the transactions that defendants evidently wanted to explore were fully disclosed and, in any case, that they were not relevant to whether Cuneo and Patterson had engaged in improper self-dealing. The Court did not take up the motion immediately.

Plaintiff then called Interpool's Astrin. Counsel for the Cuneo Defendants completed his cross-examination of Astrin without seeking to go into the subject of related party transactions involving persons other than the defendants. During the cross on behalf of the other defendants, the Court sustained an objection to a question as to whether Interpool ever had sold containers to another sales agent named Haute. (Tr. 477)

Following a recess, the Court heard counsel out of the presence of the jury both with respect to the question to which objection had been sustained and as to Interpool's motion *in limine*. It adhered to its ruling on the Haute question, noting that the alleged Haute transaction had been approved by Interpool after the disclosure of Haute's interest, whereas the claim against Cuneo and Patterson rested in major part on the concealment of their interests. (*Id.* at 478) Counsel for the Cuneo Defendants then announced that he had "no interest in delving into the particulars of the transactions that are listed partly in the deposition testimony and partly in the [Interpool] SEC filing." (*Id.* at 481) He went on to say, in essence, that the disclosure of the personal interests of others who had engaged in related party

transactions with Interpool was unimportant because they were insiders and had disclosed to themselves, which of course is incorrect in view of the fact that Interpool has other shareholders and the disclosures appeared in public SEC filings. (*Id.* at 481–82) The Court then ruled that defendants were "not to go into the alleged self-interested transactions between Tuchman or others of Interpool that do not involve the matters in suit." (*Id.* at 482)

The other two transcript references made by the Cuneo Defendants in support of this argument add nothing of substance. In one case, counsel withdrew the question at issue. (*Id.* at 566–67) In the other, an objection was sustained, but counsel proceeded to elicit the substance of the information in response to subsequent questions. (*Id.* at 542–43) At no point did any of the defendants make an offer of proof except insofar as (a) the colloquy at pages 481 through 483 of the transcript indicated an intention to prove that Interpool had sold equipment to Haute in transactions in which Haute's interest was disclosed, and (b) the Court was generally aware that the defense wished to establish that certain Interpool insiders had engaged in related party transactions with Interpool which were disclosed in Interpool's SEC filings.

In these circumstances, the Cuneo Defendants' motion for a new trial on the ground that the Court improperly excluded relevant evidence is without merit. The question as to the dealings with Haute was not even asked on their behalf and they therefore have no standing to complain of the ruling sustaining the objection. More basically, evidence that Interpool engaged in related party transactions with others, whose interests were known to the company and disclosed to its shareholders, simply was not relevant.

The basic issue in this case was whether Cuneo and Patterson breached their duties to and defrauded Interpool by engaging in self-dealing transactions in which their personal interests were concealed.[2] Fully dis-

---

**2.** Both Cuneo and Patterson conceded that they never disclosed to Interpool their personal inter-

ests in the challenged transactions. (Tr. 222, 1436–37) Indeed, the record was filled with

closed and approved self-dealing transactions by other Interpool personnel in utterly independent transactions simply had no bearing on the issues in this case.[3] The contention that such evidence was relevant to show that Cuneo lacked the requisite fraudulent intent is frivolous, as no reasonable person could conclude from Interpool's fully informed agreement to engage in disclosed related party transactions that it was appropriate to engage in self-dealing in which one's interest was concealed. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 974 (2d Cir.1989) (consent to engage in self-dealing must be clear and explicit). In any case, the prejudicial effect of going into those transactions, in terms of waste of time and jury confusion, substantially outweighed any marginal relevance such evidence might have had. (*See* Tr. 478–83) In consequence, the evidence was properly excluded under Rules 402 and 403.

### The Damages Instructions

#### Cuneo's Compensation

Cuneo argues that the Court incorrectly charged that Interpool was entitled to recover all compensation paid to Cuneo during any period during which he breached his fiduciary duties to Interpool if the jury found, as it did, that he breached his fiduciary duty to Interpool. He contends, relying on RESTATE-MENT (SECOND) AGENCY §§ 456, 469 (1957), that the only compensation that Interpool was entitled to recover was that paid with respect to specific transactions tainted by his breach. He is mistaken.

The Court charged in pertinent part as follows:

"If you find by a preponderance of the evidence, that a fiduciary duty owed to Interpool was breached by a defendant, you must consider damages.... In the event, that the plaintiff establishes that a breach of fiduciary duty to Interpool occurred, the plaintiff, Interpool, is entitled to recover any profits realized as a result

of the breach of fiduciary duty by the person who breached his duty and anyone who aided and abetted him. It would also be entitled to recover any loss that Interpool itself sustained which was proximately caused by the breach. And it would be entitled to recover certain compensation paid by it to the person who breached his fiduciary duty. This last point requires a word of explanation.

"In addition to recovering any profits realized by a disloyal agent and any loss which Interpool may have sustained as a proximate consequence of an agent's breach of duty, Interpool is entitled to recover all compensation that you find was paid to a disloyal agent during the period of disloyalty whether that compensation was attributable to improper transactions or to proper transactions.

"In the case of Mr. Cuneo, this is comparatively straightforward. Mr. Cuneo was a commission sales agent for Interpool until he was terminated in June 1988. If you find, by a preponderance of the evidence, that he breached his fiduciary duty to Interpool, Interpool would be entitled to recover all compensation, including commissions, paid to Mr. Cuneo during the period of his disloyalty, whether it was paid directly or by the contras that were described to you in the evidence." (Tr. 1667–68)

As the Court of Appeals explained in *Musico v. Champion Credit Corp.*, 764 F.2d 102, 112–13 (2d Cir.1985), New York law long has provided that an agent who acts adversely to the agent's principal in any part of a transaction forfeits all rights to compensation for services. It noted, however, a recent trend in the State courts to bar recovery only for services rendered during periods of disloyalty. It reasoned that there is no meaningful distinction between apportionment between loyal and disloyal time periods, on the one hand, and loyal and disloyal performance, on

---

evidence of deliberate concealment of their interests, evidence that the jury quite obviously accepted.

**3.** We note that the Cuneo Defendants' memorandum states that they should have been permitted

to inquire of Interpool's Tuchman concerning *undisclosed* self-dealing. Counsel did not seek to make any such inquiry of Tuchman, and there was no offer of proof.

the other. It therefore held, absent recent State authority to the contrary, that a faithless agent does not forfeit compensation apportioned by contract to specific services where the performance of those services was proper and the breach of duty did not "taint all the dealings between the parties." *Id.* at 113–14.

*Musico* does not go nearly as far in abandoning the traditional New York rule as Cuneo would have it. Section 469 of the Restatement, cited by the *Musico* panel, states that a disloyal agent "is not entitled to compensation even for properly performed services for which no compensation is apportioned." RESTATEMENT (SECOND) AGENCY § 469 (1957). Thus, the fact that a faithless agent is not faithless in each and every aspect of the agent's actions does not mean that the agent is entitled to compensation for those aspects of the agent's activities which were not themselves disloyal. Under the Restatement view relied upon in *Musico*, the agent is entitled to retain compensation only for properly performed tasks for which compensation is specifically apportioned by contract.

Cuneo would have us hold that he is entitled to retain his commissions on all sales except those that were, in substance, sales to himself, evidently on the theory that a commission arrangement inherently apportions compensation on a transaction by transaction basis.[4] The Restatement is opaque as to the meaning of apportionment in this context. But *Musico* strongly suggests that his contention is without merit.

The problem in *Musico* was that the defendant had been engaged pursuant to four separate, written agency agreements—one to operate a taxicab business, one to collect the proceeds from the sale of certain stock, one a power of attorney limited to five specific matters, and the last a general power of attorney. The district court found no misconduct with respect to the limited power of attorney or the collection of the stock sale proceeds, but nevertheless held that all compensation under all four contracts was forfeited. In reversing, the Court of Appeals wrote as follows:

"What is before us, then, is a case where the parties have apportioned various agency tasks under a number of separate agreements, where the agents engaged in no misconduct at all in carrying out the specific tasks set out in two of those agreements, and where the agents' misdealing with respect to one task has neither tainted nor interfered with the completion of the other tasks. In these circumstances we hold that New York law, like the *Restatement*, requires us to apportion any forfeited compensation." 764 F.2d at 114.

 This is a very different case. Unlike the situation in *Musico*, here there was only one contract between Interpool and Cuneo. Cuneo's duties included loyalty to Interpool with respect to its used container sales, and he breached that duty. Since *Musico* itself acknowledged that it was pushing the limits of the trend toward relaxation of the strict rule of New York law, this Court sees no justification on the facts of this case for going further. In view of a subsequent State court decision, however, it is unnecessary to determine the precise limits of *Musico*, which did no more than forecast State law in the absence of recent State precedent.

*Bon Temps Agency Ltd. v. Greenfield,* 184 A.D.2d 280, 584 N.Y.S.2d 824 (1st Dep't 1992), was an action by an employment agency against an employee. The employee had placed two of plaintiff's personnel with a client of plaintiff, but had the commissions thus earned by plaintiff paid to herself. The plaintiff agency sued to recover the commissions, and the employee counterclaimed to recover compensation allegedly earned by her while employed by the plaintiff for her efforts in placing other employees. There

---

4. The situation of Patterson, Cuneo's co-defendant, was different. Patterson was a salaried employee with duties relating to equipment leasing and, during part of the relevant period, served also as a commissioned sales agent for used equipment sales. As the jury might have found that Patterson breached his duties in one capacity, but not the other, the Court charged that Interpool was entitled to recover the compensation paid to Patterson in a particular capacity only if he breached his duties in that capacity. (Tr. 1668–70) The jury, however, found breaches in both capacities.

was no contention that the services for which the employee sought to recover commissions were affected by disloyalty. The Appellate Division nevertheless held that the plaintiff was entitled to summary judgment dismissing the counterclaim (as well as to recover the diverted commissions) on the ground that a faithless employee is not entitled to any compensation whatever:

> "We reverse the order of the Supreme Court and grant the plaintiff's motion for partial summary judgment and dismissal of the counterclaims. It is well settled that ' "[An employee] is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties. Not only must the employee or agent account to his principal for secret profits but he also forfeits his right to compensation for services rendered by him if he proves disloyal." (Lamdin v. Broadway Surface Adv. Corp., 272 N.Y. 133, 138 [5 N.E.2d 66]; see, also, Western Elec. Co. v. Brenner, 41 N.Y.2d 291, 295 [392 N.Y.S.2d 409, 360 N.E.2d 1091]; Murray v. Beard, 102 N.Y. 505 [7 N.E. 553].)' (Maritime Fish Prods., Inc. v. World Wide Fish Prods., 100 A.D.2d 81, 88, 474 N.Y.S.2d 281).

> \* \* \* \* \* \*

> " \* \* \* Since a disloyal employee is not entitled to receive compensation, whether commissions or salary [citations omitted], the first counterclaim must be dismissed." 184 A.D.2d at 280–81, 584 N.Y.S.2d at 825–26.

Bon Temps thus is precisely in point. The Appellate Division there held that the faithless employee was not entitled either to retain the commissions improperly diverted or to be paid commissions for placing other employees in transactions in which there was no claim of disloyalty. In consequence, while we read Musico as supporting the instructions given here for the reasons set forth above, the instructions clearly were proper in any case under Bon Temps.[5]

### The Supplemental Charge

The Cuneo Defendants argue also that the Court's supplemental instructions to the jury on the RICO counts were erroneous. In order fully to understand this point, it is helpful to review the relevant events.

To begin with, the RICO aspect of this case was somewhat complex. Interpool asserted claims both of substantive violations of RICO under 18 U.S.C. § 1962(c) and conspiracy to violate RICO under 18 U.S.C. § 1962(d). It made each of these claims with respect to four alleged enterprises: (1) Sumo Enterprises, Inc. ("Sumo"), (2) Intermodal Services of Florida, Inc. ("ISF"), (3) Genco Associates, Inc. ("Genco"), and (4) an association in fact enterprise consisting of all of the defendants including Sumo, ISF and Genco. It sought six different elements of damage against each defendant on both the substantive and conspiracy theories as to each of the four alleged enterprises. The case therefore was submitted to the jury with a special verdict form that required a separate finding as to liability as to each defendant on both the substantive and conspiracy theories.[6] The verdict form required the jury as well to make separate findings with respect to causation and the amount of damage on each of the six claimed elements of damage with respect to each alleged enterprise on both the substantive and conspiracy theories. There was no objection to the special verdict form and no objection material to this aspect of the motion to the initial charge.

---

5. Since the federal courts are bound by Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and statute, 28 U.S.C. § 1652, to apply the law of New York to the breach of fiduciary duty claims at issue here, any tension between Bon Temps and Musico must be resolved in favor of following the State court decision, which postdates Musico, absent compelling indications that Bon Temps would not be followed by the New York Court of Appeals. E.g., Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 629–30 & n. 3, 108 S.Ct. 1423, 1428–29 & n. 3, 99 L.Ed.2d 721 (1988), quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); Pentech Int'l, Inc. v. Wall Street Clearing Co., 983 F.2d 441, 445 (2d Cir. 1993); Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 84 (2d Cir.1991).

6. Separate findings were required also as to plaintiff's aiding and abetting theory. These findings, however, were rendered immaterial by the jury's determination that each defendant was liable as a principal on the substantive count.

Some time after the case went to the jury, the jury returned with a note that inquired: "If we agree that damages are to be awarded, must they be awarded for each and every category regarding Questions 6 through 9 and 18 through 21?"[7] (Tr. 1702) After consultation with counsel, the Court responded as follows:

"Members of the jury, I understand your note to be asking whether, in Questions 6 through 9 and 18 through 21, you are obliged to award damages in each of the six categories or types of damages listed in each one of the categories on the verdict form. The answer is no.

"If you answer any of Questions 6 through 9 and 18 through 21, you are to determine separately, in accordance with the instructions that I gave you this morning, whether or not each or any of the six categories of damages listed in each question was proved by a preponderance of evidence and, if so, in what amount." (Id. 1706)

No objection was taken to this response. (Id. 1702–07) After the jury retired again, plaintiff's counsel expressed concern that the jury had not understood the response. He indicated, for the first time, a belief that the jury in substance was asking whether it could find a lump sum of damages or whether, instead, it was obliged to divide the total damages it found among all of the possible bases for damages listed on the special verdict form. (Id. 1707–09) No further instruction, however, was given at that time.

The jury then returned a verdict. It found liability as to all defendants on all theories save aiding and abetting the RICO violations, a finding which was obviated by the jury's determination that all defendants were liable under RICO as principals. It found also that plaintiff sustained each of the six alleged elements of claimed damage, and it found some amount of damages of each type with respect to each of the four enterprises and both of the theories of liability.

It was apparent immediately that the responses on the special verdict form were inconsistent in at least one substantial respect. The sum of the damages found with respect to the conduct of the affairs of each of the three single firm enterprises—the enterprises consisting of Sumo, ISF, and Genco, respectively—was over $1.2 million, dramatically higher than the $6,000 damages found as a result of the conduct of the affairs of the association in fact enterprise. Since the association in fact enterprise consisted of Sumo, ISF and Genco, as well as other defendants, this was a logical impossibility. The damages caused by the overall enterprise had to be equal to or greater than the sum of the damages caused by the three single firm enterprises. Indeed, counsel for the defendants admitted as much in the robing room conference that ensued immediately upon the receipt of the verdict. (Tr. 1730–31, 1734–36)

Upon further review, it became clear also that the jury had misunderstood the Court's response to its question during deliberations in just the way apprehended by plaintiff's counsel and that there were other inconsistencies. It appeared that the jury, instead of determining independently the amount of each element of damages sustained on each legal theory as to which it found liability, found an overall damage amount and then allocated it among both of the RICO counts and, within each count, among all of the claimed elements of damage.

For one thing, the jury found a total of $98,500 in damages on each of five of the six claimed elements on each of the substantive and conspiracy counts. On the sixth element, the claim that Interpool paid certain storage charges to Miami Container Rental in 1988–89 as a result of defendants' actions, it found $148,500 in damages sustained on the substantive count and $123,500 on the conspiracy count, this despite the fact that plaintiff neither claimed nor proved more than $75,000 of such damages.

7. Questions 6 through 9 sought findings as to damages as to each alleged enterprise on the Section 1962(c) claims. Questions 18 through 21 were identical except they dealt with the Section 1962(d) claims.

For another, the sum of all of the damages found on the initial verdict form with respect to the activities of the three single firm enterprises was approximately equal to the total amount of damages claimed by the plaintiff:

| Damages caused by activities of: | § 1962(c) claim | § 1962(d) claim | Total | Plaintiff's claim |
|---|---|---|---|---|
| Sumo | $241,000 | $241,000 | $482,000 | $432,000 |
| ISF | $295,000 | $225,000 | $520,000 | $540,000 |
| Genco | $102,000 | $102,000 | $204,000 | $200,000 |
| **Total** | **$638,000** | **$568,000** | **$1,206,000** | **$1,132,000** |

Nor was there any rational explanation for the jury, having found liability on both the conspiracy and the substantive claims, to find less damages on the former than the latter. Plaintiff neither proved nor argued for any different measure.

The Court consulted at length with counsel. The defendants took the position that the verdict should be accepted as is and objected to resubmission of the case. The Court, however, then gave the following instruction: [8]

"The question in my mind is whether you have answered Questions 6 through 9 and 18 through 21 on an individual basis, that is to say, answered each one without regard to any of the others.

"Let me give you an example. In Question 6, I asked you to find whether Interpool lost profits on container sales that Interpool would have made but for the activities of Sumo Enterprises as a proximate result of the defendants' violation of RICO in conducting the affairs of Sumo. You said 'Yes.' You gave an amount.

"In answering Question 9, I asked you to find whether Interpool lost profits on container sales that Interpool would have done but for the activities of Sumo as a result of defendants' violations of RICO in conducting the affairs of the enterprise consisting of all of the defendants including Sumo and not just Sumo alone. You gave a different and smaller amount.

"That suggests that it is possible that in answering Question 9, you may have taken into account the amount of damages you awarded on Question 6 for lost profits on container sales in answering the question about lost profits on container sales in Question 9.

"The point of my further instruction to you before you went into the jury room earlier was to make it clear that you are not to do that. You are to answer each part of each question separately every time it is asked, without regard to the other times it is asked or the other answers you give, even if you put the same damages down in response to more than one question.

"Now, I will give you an example with numbers in an effort to be clearer on my part, and I will take a different question.

"In Question 7 you are asked whether Interpool lost profits on container leases that Interpool would have done but for the activities of ISF as a result of the defendants' violations in conducting the affairs of ISF alone. If you find by a preponderance of the evidence that Interpool—and I am just going to pick a number, and I suggest nothing by the number—lost, say $17,000 because the defendants conducted the affairs of ISF through a pattern of racketeering, the answer to Question 7 is $17,000, no matter what your answer is to any other question in this form.

"Now, in Question 9 you are then asked if Interpool lost profits on container leases that Interpool would have done but for the defendants' violations in conducting the affairs of the enterprise that consists of all of

8. The Court first instructed the jury in substance that it was to answer each of the damages questions without regard to its answers to any other question and that each question stood on its own footing. (Tr. 1747–48) The jury, however, immediately responded that it did not understand this supplemental instruction. (*Id.* 1748–50) The instruction quoted in the text was given in response to that note.

the defendants together, including ISF, not just ISF. If you find by a preponderance of the evidence that Interpool lost that very same $17,000 of leasing profits, not only as a result of the defendants having conducting the affairs of ISF through racketeering, which is Question 7, but also by the defendants conducting the affairs of the overall association in fact enterprise—that includes everybody, including ISF—through a pattern of racketeering, then your answer should be $17,-000, even though you put down that very same $17,000 in the answer to the similar part of Question 7.

"That is what I mean when I say that each question should be considered individually without regard to the other questions and answers.

"The problem of avoiding any improper duplication is a problem for me, for the Court, and the lawyers and not a problem for the jury.

"Your role is to determine from the evidence what damages were caused and to tell which violation or violations caused those damages. It is possible that the same damages were caused by more than one violation.

"So at this point I am going to ask you to go back to the jury room and reconsider Questions 6 through 9 and 18 through 21. I instruct you that the amount you are to fill in with respect to each type of damages in every question in which it appears should reflect the full amount of the damages of that type, if any, that you find were proximately caused by the specific violation that that question is asking you about.

"And in answering each one of those questions, you are to focus only on the question that you are answering and to pay no attention, while you are answering that question, to any of the other questions or any of the other answers.

"Now, if the verdict, as you have already reported it, is the verdict that you intend, in light of all the instructions I have given you, including these, you are to tell the marshal.

"If you want to change your answer to any or all of those questions, any or part of those eight questions—6, 7, 8, 9, 18, 19, 20 and 21—fill in your new answers on another copy of the verdict form." (Tr. 1760–63)

The jury thereupon returned a second, revised verdict. The details of that verdict, which in the Court's view eliminated the difficulties perceived upon the jury's initial response, are set forth in our prior opinion approving the form of judgment and need not be recounted here.

■ Against this background, Cuneo's motion manifestly lacks merit. The jury's initial verdict was patently inconsistent, no doubt as a result of its misunderstanding of the response to the note it sent in during deliberations. Indeed, defendants did not dispute the existence of the inconsistencies at the time and do not do so now. In consequence, the Court was bound to try to resolve the inconsistency, and attempting to clarify its instructions was well within its discretion. *See Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 890–91 (2d Cir.1988); *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1990), *cert. denied*, 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991); *Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 444 (1st Cir. 1989). Apart from the vague protestation that the Court's supplemental charge in effect directed the jury to increase its award—which is flatly contrary to the language of the instruction, as it advised the jury among other things that it was entitled to state that the initial verdict reflected its intentions—the Cuneo defendants have no specific objection to the instruction.[9] There is no basis for a new trial.

9. Nor do they have much practical basis for complaint. Given the clarity of the supplemental instruction and the fact that the jury's revised findings as to damages on the substantive and conspiracy counts were identical, the Court entered judgment only for the amount found on one count rather than adding the two. *Interpool Ltd. v. Patterson*, No. 89–8501, 1994 WL 665850, at

*2–3, U.S.Dist. LEXIS 16897, at *7–8 (S.D.N.Y. Nov. 28, 1994). The jury's initial verdict, in contrast, found different amounts of damage on the substantive and conspiracy counts. In view of the ambiguity, the Court might well have been justified in entering judgment for the combined amount in an effort to give effect to the jury's intentions. *See, e.g., Geosearch, Inc. v. Howell*

Accordingly, the motion for a new trial is denied.

SO ORDERED.

*Petroleum Corp.*, 819 F.2d 521, 527–28 (5th Cir. 1987); *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 963–64 (5th Cir.1981) (trial court prop- erly entered judgment for total of all damages found against each defendant on theory that jury had misunderstood joint and several liability).